747 A.2d 322

JEANNE SMITH–BOZARTH, PLAINTIFF–APPELLANT, v. THE COALITION AGAINST RAPE AND ABUSE, INC. AND TERESA M. DOWNEY, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 15, 2000—Decided March 21, 2000.

Before Judges SKILLMAN, D'ANNUNZIO and FALL.

*Joseph C. Grassi,* argued the cause for appellant (*Rossi, Barry, Corrado, Grassi & Radell,* attorneys; *Mr. Grassi,* on the brief).

*Marilyn S. Silvia,* argued the cause for respondents (*Hill Wallack,* attorneys; *Ms. Silvia,* on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

This appeal involves a complaint brought under the Conscientious Employee Protection Act (CEPA), *N.J.S.A.* 34:19–1 to –8, by an employee of a social services agency who alleges she was wrongfully discharged for denying the head of the agency unrestricted access to files containing confidential information obtained from the agency's clients. We conclude that there is no clear mandate of public policy that prohibits the head of a social services agency from obtaining unrestricted access to the agency's files, and therefore affirm the dismissal of plaintiff's complaint.

Defendant Coalition Against Rape and Abuse, Inc. (CARA) is a nonprofit organization located in Cape May County which provides counseling and other supportive services for victims of sexual and physical abuse. Plaintiff, a certified social worker, was employed by CARA in the position of Rape Program Coordinator. In late April 1997, defendant Teresa R. Downey was appointed Acting Executive Director of CARA.

At the request of a former client, plaintiff wrote a letter to the Department of Social Services confirming that the client had sought services from CARA. Plaintiff claims that she instructed the secretary who typed the letter not to mail it until the client

signed a release form. However, the letter was mailed without obtaining a release.

According to Downey, plaintiff told her on Friday, May 23, 1997, that a former client had asked her to send a letter to the Department of Social Services. Plaintiff expressed concern that the client might be attempting to defraud the Department by falsely claiming she had become pregnant as a result of a rape, because that was the only way the Department would approve benefits for the child. Downey then asked plaintiff to show her the letter and release form, but it was late in the afternoon and plaintiff went home without producing these materials. The following week, Downey obtained a copy of the letter from the secretary who typed it, but was unable to locate any authorization for release of the letter. Consequently, Downey again asked plaintiff to show her the release form. However, plaintiff went home sick and remained out of work the rest of the week. When plaintiff did not return to work the next week, Downey called her at home and said she wanted to see the client's file. But plaintiff refused to disclose the location of the file, telling Downey she "had to give her a reason before [plaintiff] would get the file or tell [Downey] where the file was on the phone."

When plaintiff returned to work on June 4, 1997, Downey told her she was being placed on probation for insubordination. Downey then again directed plaintiff to bring her the client file. However, plaintiff stated that before getting the file, she wanted to discuss her "reason for not following [Downey's] order," which was "the importance of keeping rape and incest files confidential." Downey then discharged plaintiff.

A week later, plaintiff brought this CEPA action against CARA and Downey. Plaintiff alleged that she was discharged in retaliation for her refusal to turn over confidential client files to Downey, and that she "reasonably believed that allowing Downey access to these highly sensitive materials was a violation of law, rule or regulations, and was incompatible with public policy." Plaintiff sought both compensatory and punitive damages.

Defendants moved for summary judgment on the ground that plaintiff would not have violated any law, rule or regulation, or other clear mandate of public policy by allowing Downey access to the files concerning CARA's clients. The trial court denied the motion by a written opinion which stated in pertinent part:

Plaintiff claims that she refused to allow her supervisor access to these personal diaries and journals because she believed them to be confidential and that disclosure should only be on a need to know basis. Plaintiff understood this to be both the policy in her place of employment, ... as well as a policy embodied in, among others, the Professional Counselor Licensing Act, ... which provides that communications between a professional counselor and persons counseled while performing counseling shall be confidential and its secrecy preserved; the Social Worker's Licensing Act, ... which privileges a licensed or certified social worker not to disclose any confidential information acquired from a client or patient while performing social work services for that client; and the victim/counselor privilege, ... which renders confidential communications and documents generated between a victim and counselor, disclosed in the course of the counselor's treatment of the victim for any emotional or psychological condition resulting from an act of violence.

....

Therefore, plaintiff has established, as a matter of law, that there exists a clear mandate of public policy respecting the confidentiality of the highly personal and intimate client diaries and journals, as required by CEPA.

After taking plaintiff's deposition, defendants renewed their motion for summary judgment. The trial court granted this motion, concluding on the basis of plaintiff's deposition testimony that she had "failed to establish that she 'reasonably believed' that turning over the specific client file at issue to then-Acting Director Downey would violate the clear mandate of public policy regarding confidentiality of highly personal and intimate client diaries and journals contained in a rape counseling victim's file."

On appeal, plaintiff argues that the trial court erred in concluding that there was no factual dispute as to "whether she 'reasonably believed' she was fired because she would not accede to Downey's *carte blanche* demand for access to rape and abuse files." In their answering brief, defendants argue that allowing the head of a social services agency unrestricted access to client files does not violate any law, rule or regulation, or clear mandate

of public policy,[1] and alternatively, that the trial court correctly concluded that plaintiff's own deposition testimony showed she did not "reasonably believe" she would violate any "clear mandate of public policy" by acceding to Downey's demand that she turn over a specific client file.

We conclude that there is no law, rule or regulation, or clear mandate of public policy that prohibits the head of a social services agency from obtaining unrestricted access to the files of the agency's clients. Accordingly, we affirm the dismissal of plaintiff's complaint. We do not reach the question whether plaintiff established a genuine factual issue as to her alleged "reasonable belief" that Downey was not entitled to unrestricted access to the files.

Plaintiff's CEPA claim is based on *N.J.S.A.* 34:19–3c(1) and –3c(3), which provide that:

An employer shall not take any retaliatory action against an employee because the employee does any of the following:

. . . .

c.   Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . .; [or]

. . . .

(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare.

The threshold question in a CEPA case brought under these sections is whether plaintiff has identified either "a law, or a rule or regulation promulgated pursuant to law" *N.J.S.A.* 34:19–3c(1), or "a clear mandate of public policy concerning the public health, safety or welfare," *N.J.S.A.* 34:19–3c(3), which the employer has allegedly violated. *Mehlman v. Mobil Oil Corp.*, 153 *N.J.*

---

[1] Plaintiff contends in her reply brief that this issue is not before the court because defendants did not file a cross appeal. However, without filing a cross appeal, a respondent may seek an affirmance of the judgment on any ground raised in the trial court. *See Chimes v. Oritani Motor Hotel*, 195 *N.J.Super.* 435, 443, 480 A.2d 218 (App.Div.1984).

163, 187–88, 707 *A.*2d 1000 (1998); *MacDougall v. Weichert,* 144 *N.J.* 380, 391–93, 677 *A.*2d 162 (1996); *Schechter v. New Jersey Dep't of Law & Pub. Safety,* 327 *N.J.Super.* 428, 432, 743 *A.*2d 872 (App.Div.2000); *Regan v. City of New Brunswick,* 305 *N.J.Super.* 342, 352–53, 702 *A.*2d 523 (App.Div.1997). "Sources of public policy include the United States and New Jersey Constitutions; federal and state laws and administrative rules, regulations and decisions; the common law and specific judicial decisions; and in certain cases, professional codes of ethics." *MacDougall, supra,* 144 *N.J.* at 391, 677 *A.*2d 162. "A vague, controversial, unsettled, or otherwise problematic public policy does not constitute a clear mandate." *Id.* at 392, 677 *A.*2d 162.

Therefore, to determine whether a plaintiff has presented a viable CEPA claim, a trial court "must first find and enunciate the specific terms of a statute or regulation, or the clear expression of public policy, which would be violated if the facts as alleged are true." *Fineman v. New Jersey Dep't of Human Servs.,* 272 *N.J.Super.* 606, 620, 640 *A.*2d 1161 (App.Div.), *certif. denied,* 138 *N.J.* 267, 649 *A.*2d 1287 (1994). If the plaintiff fails to identify a clear mandate of public policy, there is no need to consider whether plaintiff has presented evidence that would support a finding that he or she "reasonably believed" defendant's conduct violated public policy. *See Mehlman, supra,* 153 *N.J.* at 181, 707 *A.*2d 1000; *MacDougall, supra,* 144 *N.J.* at 391, 677 *A.*2d 162; *Falco v. Community Medical Ctr.,* 296 *N.J.Super.* 298, 316, 686 *A.*2d 1212 (App.Div.1997). Whether a plaintiff has identified a clear mandate of public policy is a question of law which the court must decide before submitting a CEPA claim to a jury. *Mehlman, supra,* 153 *N.J.* at 187, 707 *A.*2d 1000.

In concluding that plaintiff had identified a clear mandate of public policy that would be violated by plaintiff acceding to Downey's demand for unrestricted access to CARA's client files, the trial court relied upon statutory provisions, including sections of the Professional Counselor Licensing Act, *N.J.S.A.* 45:8B–34 to –50, and Social Workers' Licensing Act, *N.J.S.A.* 45:15BB–1 to

–13, which provide that communications between a counselor and the person being counseled are confidential. However, the trial court defined the purported public policy underlying plaintiff's CEPA claim too broadly. The question is not whether there is a public policy protecting the confidentiality of communications between victims of sexual abuse and their counselors, but rather whether there is any statute, rule or regulation, or other clear expression of a public policy that prohibits an employee of a social services agency from disclosing such communications to the head of the agency.

The statutes and administrative regulations upon which plaintiff relies contain general declarations of the confidentiality of communications between counselors and the persons they counsel, without in any way addressing the subject of communications within a social services agency. The Professional Counselor Licensing Act provides that "[a]ny communication between a licensed professional counselor ... and the person or persons counseled while performing counseling ... shall be confidential and its secrecy preserved." *N.J.S.A.* 45:8B–49. The Social Workers' Licensing Act provides that "[a] social worker licensed or certified pursuant to the provisions of this act shall not be required to disclose any confidential information that the social worker may have acquired from a client or patient while performing social work services for that client or patient." *N.J.S.A.* 45:15BB–13. In addition, the State Board of Social Work Examiners has adopted administrative regulations which provide that a social worker "shall preserve the confidentiality of information obtained from a client in the course of performing social work services for the client," *N.J.A.C.* 13:44G–12.3(a), and "shall establish and maintain a procedure to protect the client record from access by unauthorized persons," *N.J.A.C.* 13:44G–12.3(b). However, nothing in these regulations suggests that the head of a social services agency which employs a social worker is an "unauthorized person[ ]" who may be denied access to client records.

These confidentiality provisions are similar to the confidentiality obligations imposed upon various other professionals. *See, e.g., R.P.C.* 1.6 (attorneys); *N.J.A.C.* 13:35–6.5(d) (physicians); *N.J.S.A.* 45:14B–28 (psychologists); *N.J.S.A.* 45:8B–29 (marriage counselors). Although the maintenance of the confidentiality of communications from clients and patients is one of the most solemn obligations of any member of these professions, confidential information may be shared with other workers in a professional office without violating this obligation. For example, attorneys frequently dictate memoranda and letters to secretaries and give assignments to paralegals that involve the disclosure of confidential information obtained from clients. Similarly, doctors must afford nurses and medical assistants access to patient files and other confidential information in order to efficiently perform their professional responsibilities. Even though any sharing of confidential information within a professional office may pose some risk of a breach of confidentiality, the statutory and regulatory provisions governing most professions, including professional counselors and social workers, do not deal with internal communications of confidential information.[2] Therefore, plaintiff has failed to identify any statute, rule or regulation, or other clear mandate of public policy that prohibits an employee of a social services agency from allowing the agency's executive director to have access to its files.

Furthermore, CARA's own internal written policy regarding the confidentiality of communications from the agency's clients pro-

---

[2] The Rules of Professional Conduct governing the practice of law state that "a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer." *R.P.C.* 5.3(b). Although the statutes and regulations governing other professions do not include similar provisions, it is arguable that any professional has an implicit responsibility to exercise reasonable care to prevent coworkers and employees from breaching the professional's confidentiality obligations. However, plaintiff admitted in her deposition that she had no reason to believe Downey would breach CARA's confidentiality obligations to its clients.

vides no authority for denying the executive director access to client files.[3] To the contrary, this document specifically states that "staff" are entitled to "access to resident records." Plaintiff also admitted in her deposition that all CARA counselors have access to client files. In addition, a section of CARA's protocol dealing with the agency's responsibility to report suspected child abuse to DYFS provides that "[t]he Executive Director ... must be consulted to review the information and give formal authorization."

It is also obvious that the head of a social services agency must have access to client files to assure that the agency is properly performing its responsibilities, to evaluate the performance of staff members, to obtain information necessary for reports, and to respond to any emergency that may arise when a staff member with primary responsibility for a file is out of the office. This case is an example of why the head of an agency must have access to client files. Plaintiff was out sick when an urgent matter arose concerning the agency's possible violation of client confidentiality and involvement with welfare fraud. Consequently, Downey needed to find out the exact contents of the letter to the Department of Social Services, whether the client had signed a release, whether there was evidence the client was attempting to defraud Social Services, and whether CARA was implicated in any impropriety.

A professional licensing board could adopt regulations that would restrict the disclosure of especially sensitive confidential information within a social services agency. However, it is undisputed that there was no administrative regulation that prohibited plaintiff from disclosing client files to Downey. Therefore, plaintiff failed to satisfy the threshold requirement of a CEPA claim that she identify a statute, rule or regulation or other clear

---

[3] We express no opinion as to whether such an internal policy document could be found to constitute "a clear mandate of public policy concerning the public health, safety or welfare." *N.J.S.A.* 34:19–3c(3).

mandate of public policy that would justify her refusal to give a client file to Downey.

Affirmed.