828 A.2d 893

REGINA DZWONAR AND CYNTHIA A. BURGESS, PLAINTIFFS–APPELLANTS, v. ROBERT MCDEVITT, LOCAL 54 OF THE HOTEL EMPLOYEES RESTAURANT EMPLOYEES INTERNATIONAL UNION, DEFENDANTS-RESPONDENTS, AND ALAN M. COHEN, JABIEL SANTIAGO, ALBERT SICILIANO AND THE LOCAL 54 EXECUTIVE BOARD, DEFENDANTS.

Argued January 7, 2003—Decided August 12, 2003.

452

454

*Nelson C. Johnson* argued the cause for appellants (*Johnson & DeMarco,* attorneys; *Mr. Johnson* and *Nancy A. Valentino,* on the briefs).

*William T. Josem* argued the cause for respondents (*Cleary & Josem,* attorneys; *Mr. Josem, Regina C. Hertzig* and *Cassie R. Ehrenberg,* on the briefs).

*Alan Hyde,* a member of the California bar, submitted a brief on behalf of amicus curiae The Association for Union Democracy, Inc. (*Ronald Chen,* attorney).

*Raymond G. Heineman, Jr.,* submitted a brief on behalf of amicus curiae New Jersey State AFL–CIO (*Lynch Martin,* attorneys).

The opinion of the Court was delivered by

ZAZZALI, J.

This appeal requires us to determine whether the jury's verdict in favor of plaintiff is sustainable under the Conscientious Employee Protection Act (CEPA), *N.J.S.A.* 34:19–1 to –8. Plaintiff, formerly a paid arbitration officer and an unpaid elected Executive Board member of Local 54 of the Hotel and Restaurant Employees International Union (Local 54 or the Union), alleges that the Union wrongfully discharged her from her paid position after she repeatedly voiced concerns regarding the Executive Board's failure to read its minutes at general membership meetings. Plaintiff claims that she believed that the Board's conduct denied Union members the right to participate, deliberate, and vote in Union matters as prescribed by federal labor law and the Union's internal bylaws.

The jury found that defendants had violated CEPA, but the Appellate Division set aside the verdict on the ground that federal labor law preempted plaintiff's CEPA claim. We conclude as a matter of law that plaintiff's asserted belief that defendants' conduct violated a law or public policy was not objectively reasonable. We therefore affirm the Appellate Division. Our conclusion that plaintiff has failed to present a CEPA claim makes it unnecessary to address the panel's holding that federal labor law preempts plaintiff's state law claim.

## I.

Local 54 is a labor organization that represents approximately 15,000 employees in the hotel and restaurant industries in Atlantic City and elsewhere in the state. In accordance with the Union's bylaws and constitution, an Executive Board governs its day-to-day operations, which include approving expenditures, hiring and firing staff, holding Executive Board and general membership meetings, and handling other ministerial aspects of Union business. The Board consists of a President, Vice-President, Secretary-Treasurer, Recording Secretary, Chairman of the Trustees and four members elected from the rank and file. General membership meetings occur quarterly and Executive Board meetings occur at least monthly.

In August 1996, the general membership elected defendants Robert McDevitt, President, Al Cohen, Vice-President, and Jabiel Santiago, Secretary-Treasurer, to Local 54's Executive Board. Plaintiff Regina Dzwonar, a dues-paying member of the Union since 1983, also ran on McDevitt's slate and was elected to the unpaid position of Recording Secretary. According to the bylaws, the Recording Secretary is required to "keep records of all proceedings of the Executive Board and General Membership meetings under the direction of the Secretary-Treasurer." Later that year, plaintiff accepted a full-time paid position as an Arbitration Officer/Representative for the Union. In that capacity, she represented the Union and individual Union members in grievance and arbitration proceedings.

Shortly after the 1996 election, Dzwonar came into conflict with McDevitt and other members of the Executive Board over several of the Union's internal procedures and policies. Specifically, plaintiff claims that certain actions taken by the Executive Board, including the hiring of a business agent, the authorization of overtime pay to the Union Controller, the issuance of credit cards to certain Union officers, a loan arrangement with Local 54's parent International Union, and the prepayment of rent for a newly hired Union organizer, should have been but were not fully

disclosed to the rank-and-file members for their approval pursuant to Local 54's bylaws. Plaintiff relied on Article III, Section (4)(a) & (b) and Article IX, Section 10(a) & (b) of Local 54's bylaws, which provide, in pertinent part:

Section 4.

(a) All applications for donations, and all proposed expenditures other than the routine operating expenses, shall when timely, first be referred to the Executive Board for their approval, which approval shall be subject to membership ratification by a majority vote of the membership present at a regular or special meeting.

(b) All wages, salaries and regular expense allowances paid to officers, employees, delegates and committees must be determined by a recommendation of their Executive Board and approval of a regular meeting of the Union.

Section 10.

(a) .... All actions of the Executive Board are subject to the approval of the membership meetings. There shall be no stay of execution from Executive Board actions. All expenditures of the Local Union shall be subject to the approval of the Executive Board. The Executive Board shall in general take up for discussion and decision all business of the Local Union. A majority of the Executive Board members present shall constitute a quorum.

(b) All applications for donations, and all proposed expenditures other than routine operating expenses shall first be referred to the board for their approval, which approval shall be subject to membership ratification by a majority vote of the membership present at a regular or special meetings. All wages, salaries and regular expense allowances paid to officers, employees, delegates and committees must be determined by a recommendation of their Executive Board and approval of a regular meeting of the Union.

At trial, plaintiff testified that although she did not believe that the Executive Board's actions were illegal, her objections to the Board's refusal to read its minutes at the general membership meetings reflected her concern that the Board was denying the rank-and-file members the right to participate, deliberate, and vote in Union matters as prescribed by the Labor Management Reporting and Disclosure Act (LMRDA), 29 *U.S.C.A.* §§ 401 to – 531.

Plaintiff explained that she was "familiar with Local 54's By-laws and the LMRDA prior to attending the George Meaney [sic] Center for Labor Studies in May of 1997." While at the Meany Center, plaintiff overheard other union representatives state that "many union locals were reading their Executive Board minutes at

general membership meetings in order that the members could deliberate and vote upon the actions being taken by the Board." Accordingly, plaintiff "pursued this issue" with the Board, "demanding that the general membership be informed of, and approve, all Executive Board actions." When the Board did not respond to plaintiff's concerns, plaintiff sent a letter in July of 1997 to the Board, stating:

> There is some feedback from the rank and file that some members are suggesting that we are violating the By–Laws because we do not read the minutes of the E–Board meetings into the record at the G.M. meetings. We should at least offer them even if we ask for a motion to enter them as read. I really think we should address this A.S.A.P.

In September of 1997, McDevitt, with the approval of a majority of the Executive Board, discharged plaintiff from her position as an arbitration officer, allegedly for mishandling "internal documents," including the official minutes of the Executive Board meetings, and more generally for insubordination. Plaintiff's termination letter stated that "[r]ecent indiscretions and remarks regarding the current Administration and Officers have made effective functioning in your position impossible." It is undisputed that plaintiff provided several Union members with unauthorized access to Executive Board minutes.

Despite plaintiff's termination as an arbitration officer, she continued to perform her duties as Recording Secretary. At a general membership meeting in December of 1997, plaintiff objected to the Executive Board's refusal to read its minutes, while other members objected to its failure generally to provide the rank-and-file members with greater access to those minutes. For example, John Dzwonar, plaintiff's husband and member of Local 54, accused the Executive Board of "sanitizing" its minutes. Another Union member objected to the Board's refusal to allow plaintiff to tape record the Executive Board's meetings. Scott Shuster, a Union member and a political opponent of Robert McDevitt, testified that he attempted to raise several questions regarding financial expenditures approved by the Executive Board, but that McDevitt stifled his ability to speak freely. The

minutes reveal that plaintiff informed McDevitt that Shuster had a right to speak freely at membership meetings.

Plaintiff filed suit under CEPA against defendants Robert McDevitt, Alan Cohen, Jabiel Santiago, Local 54, and Local 54's Executive Board, alleging that she was "terminated in retaliation for expressing [her] opinions and [her] efforts to keep [the] Union members informed of important Union business." She claimed that between October 1996 and September 1997, "[d]efendants repeatedly refused to inform the general membership ... of decisions and expenditures affecting the welfare of the Union members," and that her termination as an arbitration representative was in retaliation for expressing a "reasonable belief" that the Executive Board's failure adequately to inform the general membership of its actions violated the LMRDA and Local 54's bylaws.

At the close of plaintiff's case, defendants filed a motion to dismiss for failure to state a claim under CEPA. The trial court denied defendants' motion, concluding:

> The thrust of [Dzwonar's] argument is that there was a concerted attempt by the defendants to prevent 29 *U.S.C.A.* § 411 from being affected [sic] and that, in fact, they were thwarting—and intentionally thwarting the rights of the members to participate in deliberations, to vote on the business of the meetings, to express their views or at least to take any kind of knowledgeable vote or to express their views and to obtain information which was their right to have.

> And the Court finds that if, in fact, the jury believes that is the case, and they believe the other elements under the Statute, that then they could, in fact, find in her favor on these issues.

The jury found that defendants had violated CEPA and awarded Dzwonar $84,000 in compensatory damages, consisting of $40,000 for lost wages and $44,000 for emotional distress.[1]

Defendants filed one motion to set aside the jury's verdict based on the weight of the evidence, and another based on allegations of juror bias. The trial court denied both motions. Defendants also

---

[1] Another plaintiff in the case, Cynthia Burgess, brought an action against defendants for invasion of privacy. The jury returned a verdict in her favor but the Appellate Division reversed because, in its view, Burgess had not proved her claim. That matter is not before us.

filed a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. The court denied that motion, stating:

[I]t was up to the jury to make a determination whether [plaintiff] had and was, as she said, continually complaining about ... violations of the members' rights to speak and be represented, and giving specific examples of what she considered to be questionable activities. But she said repeatedly through her testimony that it wasn't so much that any of those particular activities were illegal, but that the membership was not adequately advised about them and that she was not, they were not adequately able to speak at meetings and question and find out what was going on because things were not being properly presented, because dissenting questions and comments were being shouted down so that even asking a question was not really being, there was no response. . . .

The Appellate Division reversed, holding that federal labor law preempted plaintiff's CEPA claim because it was "based solely on an alleged LMRDA violation implicating neither federal nor state criminal law." *Dzwonar v. McDevitt,* 348 *N.J.Super.* 164, 170, 791 *A.*2d 1020, 1023 (2002). Further, the panel noted that "[t]he essence of [plaintiff's] dispute with McDevitt and the Executive Board was over policy relating to the manner and extent of providing information to the general membership." *Id.* at 174, 791 *A.*2d at 1026. Thus, the panel concluded that "even assuming that [plaintiff] was dismissed from her employment because she reasonably believed that the LMRDA required more of defendants, that policy dispute cannot in itself form the basis of a CEPA claim." *Ibid.* (citation omitted).

We granted plaintiff's petition for certification limited to issues implicating CEPA and the LMRDA, 172 *N.J.* 180, 796 *A.*2d 897 (2002).

II.

The Legislature enacted CEPA to "protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." *Abbamont v. Piscataway Township Bd. of Educ.,* 138 *N.J.* 405, 431, 650 *A.*2d 958, 971 (1994). In furtherance of that goal, the statute provides in relevant part:

An employer shall not take any retaliatory action against an employee because the employee does any of the following:

. . . .

c.  Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . .;

(2) is fraudulent or criminal;  or

(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

[*N.J.S.A.* 34:19-3.]

A plaintiff who brings a cause of action pursuant to *N.J.S.A.* 34:19-3c must demonstrate that: (1) he·or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;  (2) he or she performed a "whistle-blowing" activity described in *N.J.S.A.* 34:19-3c;  (3) an adverse employment action was taken against him or her;  and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. *Kolb v. Burns,* 320 *N.J.Super.* 467, 476, 727 *A.2d* 525, 530 (App.Div.1999) (citation omitted); *see also Mosley v. Femina Fashions, Inc.,* 356 *N.J.Super.* 118, 127, 811 *A.2d* 910, 915-16 (App.Div.2002), *certif. denied,* 176 *N.J.* 279, 822 *A.2d* 609 (2003). At issue in this case is whether plaintiff, who argues that she objected to actions by defendants that she reasonably believed violated both the law and public policy, satisfies the first prong of that test.

■   A plaintiff who brings a claim pursuant to *N.J.S.A.* 34:19-3c need not show that his or her employer or another employee actually violated the law or a clear mandate of public policy. *Gerard v. Camden County Health Servs. Ctr.,* 348 *N.J.Super.* 516, 522, 792 *A.2d* 494, 497-98 (App.Div.), *certif. denied,* 174 *N.J.* 40, 803 *A.2d* 636 (2002). *See also Estate of Roach v. TRW, Inc.,* 164 *N.J.* 598, 613, 754 *A.2d* 544, 552 (2000) (holding that section 3c(1) of CEPA "does not require that the activity complained of . . . be an actual violation of a law or regulation"). Instead, the plaintiff simply must show that he or she " 'reasonably believes' that to be the case." *Roach, supra,* 164 *N.J.* at 613, 754 *A.2d* at 552.

Nonetheless, a majority of our lower courts have imposed an additional procedural hurdle, requiring that when a plaintiff brings a CEPA claim pursuant to *N.J.S.A.* 34:19–3c, the trial court, as a threshold matter, must "first find and enunciate the specific terms of a statute or regulation, or the clear expression of public policy, *which would be violated if the facts as alleged are true.*" *Fineman v. New Jersey Dep't of Human Servs.*, 272 *N.J.Super.* 606, 620, 640 *A.*2d 1161, 1169 (App.Div.) (emphasis added), *certif. denied,* 138 *N.J.* 267, 649 *A.*2d 1287 (1994); *see also Maw v. Advanced Clinical Communications, Inc.*, 359 *N.J.Super.* 420, 432, 820 *A.*2d 105, 112–13 (App.Div.2003); *Cosgrove v. Cranford Bd. of Educ.*, 356 *N.J.Super.* 518, 523–24, 813 *A.*2d 591, 594–95 (App.Div.2003); *McLelland v. Moore*, 343 *N.J.Super.* 589, 600–01, 779 *A.*2d 463, 470–71 (App.Div.2001), *certif. denied,* 171 *N.J.* 43, 791 *A.*2d 221 (2002); *Schechter v. New Jersey Dep't of Law & Pub. Safety*, 327 *N.J.Super.* 428, 432, 743 *A.*2d 872, 874 (App.Div.2000); *Smith–Bozarth v. Coalition Against Rape & Abuse, Inc.*, 329 *N.J.Super.* 238, 245, 747 *A.*2d 322, 325–26 (App.Div.2000); *Falco v. Community Med. Ctr.*, 296 *N.J.Super.* 298, 310, 686 *A.*2d 1212, 1218 (App.Div.1997), *certif. denied,* 153 *N.J.* 405, 709 *A.*2d 798 (1998); *Regan v. City of New Brunswick*, 305 *N.J.Super.* 342, 353, 702 *A.*2d 523, 528–29 (App.Div.1997).

We agree with the lower courts that when a plaintiff brings an action pursuant to *N.J.S.A.* 34:19–3c, the trial court must identify a statute, regulation, rule, or public policy that closely relates to the complained-of conduct. The trial court can and should enter judgment for a defendant when no such law or policy is forthcoming. We do not agree, however, that a plaintiff must allege facts that, if true, actually would violate that statute, rule, or public policy.

We long have recognized that CEPA is remedial legislation and therefore "should be construed liberally to effectuate its important social goal." *Abbamont, supra,* 138 *N.J.* at 431, 650 *A.*2d at 971 (citations omitted). The Legislature intended CEPA to "encourage, not thwart, legitimate employee complaints." *Roach, supra,*

164 *N.J.* at 610, 754 *A.*2d at 550. Under the standard adopted by some lower courts, a plaintiff's claim may survive when that plaintiff is mistaken as to whether the activity complained of actually occurred, but will not survive when that alleged activity does not violate the law or public policy. *See McLelland, supra,* 343 *N.J.Super.* at 600, 779 *A.*2d at 470 (stating that an "employee must have an 'objectively reasonable belief' in the occurrence of such improper conduct, rather than an objection based on some other principle") (citation omitted). The goal of CEPA, however, is "not to make lawyers out of conscientious employees but rather to prevent retaliation against those employees who object to employer conduct that they reasonably believe to be unlawful or indisputably dangerous to the public health, safety or welfare." *Mehlman v. Mobil Oil Corp.,* 153 *N.J.* 163, 193–94, 707 *A.*2d 1000, 1015–16 (1998). As Judge Barry has noted, "requiring the court to determine, at the outset, whether the alleged wrongful activities, if true, *would* be unlawful appears antithetical to the language and intent of the statute." *Blackburn v. United Parcel Serv., Inc.,* 3 *F.Supp.*2d 504, 514 n. 5 (D.N.J.1998), *aff'd on other grounds,* 179 *F.*3d 81 (3d Cir.1999).

We therefore conclude that *N.J.S.A.* 34:19–3c does not require a plaintiff to show that a law, rule, regulation or clear mandate of public policy actually would be violated if all the facts he or she alleges are true. Instead, a plaintiff must set forth facts that would support an objectively reasonable belief that a violation has occurred. In other words, when a defendant requests that the trial court determine as a matter of law that a plaintiff's belief was not objectively reasonable, the trial court must make a threshold determination that there is a substantial nexus between the complained-of conduct and a law or public policy identified by the court or the plaintiff. If the trial court so finds, the jury then must determine whether the plaintiff actually held such a belief and, if so, whether that belief was objectively reasonable. A review of a prior CEPA decision by this Court is instructive of the

standard to be employed by a trial court when a plaintiff asserts a claim under *N.J.S.A.* 34:19–3c.

In *Abbamont, supra,* an industrial arts teacher at a local middle school claimed that the school board's failure to rehire him was retaliation for his complaints about inadequate health and safety conditions in the school's metal shop. 138 *N.J.* at 410, 650 *A.*2d at 960. As a threshold matter, we noted that the plaintiff had "established the existence of health and safety administrative rules and regulations and a clear mandate of public policy applicable to conditions of the metal shop[.]" *Id.* at 424, 650 *A.*2d at 967. Specifically, the plaintiff informed the trial court that he was aware of administrative regulations that required " 'dependable ventilation' " that called for " 'a minimum amount of outdoor air supply and exhaust on movement' for different types of industrial arts, including metal work." *Ibid.* After reviewing the terms of those regulations, we concluded that the plaintiff could have "demonstrated 'a reasonable, objective belief that the conduct of the school officials was a specific violation' of those regulatory standards and 'incompatible' with their public policy mandate." *Ibid.* The plaintiff's description of the "lack of ventilation and poor air quality in the shop," combined with his "work-related pulmonary problems," underscored "the reasonableness of [his] belief," as did the testimony of a ventilation expert who testified that "operating the machines in plaintiff's shop without individual ventilation hoods was unsafe[.]" *Id.* at 424–25, 650 *A.*2d at 967. Because plaintiff's evidence was closely related to the violation of a specific regulation, we reinstated the jury's verdict in favor of the plaintiff in respect of his CEPA claim.

## III.

We now address the parties' contentions. As noted, we first must identify a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy that plaintiff believed was violated by the Board's conduct. Plaintiff asserts that defendants retaliated against her after she repeatedly objected to the Execu-

tive Board's failure to permit the general membership to participate, deliberate, vote, and speak freely in violation of sections 101(a)(1) and 101(a)(2) of the LMRDA. She also alleges that defendants violated both section 501 of the LMRDA, which sets forth the fiduciary responsibilities of Union officers, and the Union's bylaws. Finally, plaintiff alleges that her termination violates a clear mandate of public policy. We address each argument in turn.

Section 101(a)(1) of the LMRDA provides that "[e]very member of a labor organization shall have equal rights and privileges within such organization ... to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings...." 29 *U.S.C.A.* § 411(a)(1). That section is an anti-discrimination provision, and thus "a union member must allege a denial of rights accorded to other members" to establish a claim. *Ackley v. Western Conference of Teamsters*, 958 *F.*2d 1463, 1473 (1992) (citations omitted); *see also Grant v. Chicago Truck Drivers*, 806 *F.*2d 114, 117 (7th Cir.1986); *Lodge 1380, Bhd. of Ry., Airline & S.S. Clerks v. Dennis*, 625 *F.*2d 819, 826 (9th Cir.1980); *Alexander v. International Union of Operating Eng'rs*, 624 *F.*2d 1235, 1240 (5th Cir.1980). The Supreme Court has stated that section 101(a)(1) is "no more than a command that members and classes of members *shall not be discriminated against* in their right to nominate and vote." *Calhoon v. Harvey*, 379 *U.S.* 134, 139, 85 *S.Ct.* 292, 295, 13 *L.Ed.*2d 190, 193–94 (1964) (emphasis added); *see also Ackley, supra*, 958 *F.*2d at 1473; *Fernandez–Montes v. Allied Pilots Ass'n*, 987 *F.*2d 278, 288 (5th Cir.1993) (stating that "[t]he statutory right to participate does not guarantee access to all union information about which a union member might wish to be made aware, to discuss with other union members, or to have an opportunity to study at his leisure"); *Mallick v. International Bhd. of Elec. Workers*, 749 *F.*2d 771, 786 (D.C.Cir. 1984) (same). *See generally,* Archibald Cox, *Internal Affairs of Labor Unions Under the Labor Reform Act of 1959*, 58 *Mich. L.Rev.* 819, 833 (1960) (noting that section 101(a)(1) reflected Congress's "accommodation between the practicalities of union

government and the commendable aim of preventing unjust discrimination between union members"); *Labor Union Law & Regulation* 31–36 (William W. Osborne, Jr. et al. eds., 2003) (discussing scope of union members' rights under section 101(a)(1)).

As noted by the panel below, "[t]he true thrust of [plaintiff's] case, as is evident from her brief, was the refusal of the Executive Board to read or distribute the minutes of its meetings at the meetings of the general membership." *Dzwonar, supra,* 348 *N.J.Super.* at 168, 791 *A.*2d at 1023. Plaintiff contends that "[r]eading the Executive Board minutes to the general membership was the means by which [she] believed the members could be best informed of the Executive Board actions and could be given the opportunity to deliberate and vote upon those actions." *Ibid.* Plaintiff's claim does not concern a "denial of rights accorded to other members" of the Union. *Ackley, supra,* 958 *F.*2d at 1473. Instead, it reflects only a disagreement regarding access to information. Although CEPA does not require that plaintiff set forth facts that, if true, would constitute a violation of section 101(a)(1) of the LMRDA, it does require a close relationship between her claims and that statute. Because no such relationship exists, we therefore conclude that plaintiff's belief that defendants' actions were in violation of section 101(a)(1) of the LMRDA was not objectively reasonable.

Plaintiff also argues that she reasonably believed that defendants violated section 101(a)(2) of the LMRDA, which states that "[e]very member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions[.]" 29 *U.S.C.A.* § 411(a)(2). Plaintiff fails, however, to identify any conduct by defendants that implicates those free speech and assembly protections. Although plaintiff alleges that defendants behaved disruptively during meetings of the Executive Board, she does not demonstrate that defendants foreclosed the expression of any particular viewpoint by the general membership. Her complaints

concern the administration of meetings generally, rather than the suppression of any one member's views. To the extent that McDevitt may have precluded Shuster from speaking at a general membership meeting, that incident occurred subsequent to plaintiff's discharge and therefore is irrelevant to her CEPA claim. Because plaintiff's claims do not implicate issues of free speech and assembly, as a matter of law she did not possess an objectively reasonable belief that defendants' actions violated section 101(a)(2).

■ Plaintiff also argues that she reasonably believed that the Board's failure to obtain approval of certain Board decisions from the rank-and-file members pursuant to Local 54's bylaws violated section 501(a) of the LMRDA. Section 501 sets forth the fiduciary responsibilities of union officers to the organization and its members, and requires that those officers hold union money and property "solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws[.]" 29 *U.S.C.A.* § 501(a). Plaintiff testified that she believed that certain actions taken by the Executive Board, including the hiring of a business agent, the authorization of overtime pay to the Union Controller, the issuance of credit cards to certain Union officers, a loan arrangement with Local 54's parent International Union, and the prepayment of rent for a newly hired Union organizer, should have been but were not fully disclosed to the rank-and-file members for their approval pursuant to the Union's bylaws. A review of the record indicates, however, that plaintiff does not contend that defendants misappropriated Union money or property. Instead, the crux of plaintiff's argument is that defendants should have explained their actions more fully to the general membership. Because plaintiff's dispute concerns the adequacy of the Union's internal procedures, we conclude as a matter of law that plaintiff did not possess an objectively reasonable belief that section 501 of LMRDA was violated.

Plaintiff also claims that her reasonable belief that defendants' actions violated the Union's bylaws provides the basis for an actionable CEPA claim. As noted, however, *N.J.S.A.* 34:19–3c(1) requires that a plaintiff object to or refuse to participate in any activity, policy or practice that the employee reasonably believes "is in violation of a law, or a rule or regulation promulgated pursuant to law...." Because bylaws are not a "law, rule or regulation" pursuant to CEPA, but rather "a contract between the union and its members," *Ackley, supra,* 958 *F.*2d at 1476, the trial court should have precluded that claim.

Finally, plaintiff alleges that her termination for "refus[ing] to acquiesce in the concealment of information from the general membership" violates a clear mandate of public policy. We cannot identify a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment that might have been violated by the Board's conduct. *Mehlman, supra,* 153 *N.J.* at 187, 707 *A.*2d at 1012–13 (noting that "determination whether the plaintiff adequately has established the existence of a clear mandate of public policy is an issue of law"). Accordingly, plaintiff's claim on that issue must fall.

IV

Because plaintiff has failed to establish a CEPA claim, we need not comment on the Appellate Division's holding that federal labor law preempts a state law claim for common law or statutory wrongful discharge when that claim implicates a union's internal policies and fails to allege that criminal conduct has occurred. The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices COLEMAN, LONG, VERNIERO, LaVECCHIA, ZAZZALI and ALBIN—7.

*Opposed*—None.