**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0326-20

KORYN RUSSELL,

     Plaintiff-Appellant,

v.

THE GIFT GROUP, INC.,

     Defendant-Respondent,

and

LOREN DROTOS, a/k/a
MARK ROBERTS,

     Defendant.

_____

Submitted October 20, 2021 – Decided December 6, 2021

Before Judges Gooden Brown and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-6264-19.

Costello & Mains, LLC, attorney for appellant (Deborah L. Mains, on the brief).

Respondent has not filed a brief.

PER CURIAM

Plaintiff Koryn Russell appeals from an August 31, 2020 Law Division order entering default judgment following a proof hearing against her former employer, The Gift Group, Inc., and its owner, Loren Drotos, collectively, defendants. Pertinent to this appeal, the trial judge awarded plaintiff damages for unpaid wages and overtime but denied her liquidated damages and reduced her requested counsel fee award by twenty-five percent. Additionally, the judge denied plaintiff's claim under the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14. We reverse and remand.

On September 4, 2019, plaintiff filed a complaint against defendants alleging violations of CEPA, the New Jersey Wage Payment Law (WPL), N.J.S.A. 34:11-4.1 to -4.14, and the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 to § 219. Defendants did not respond to the complaint, and, on July 31, 2020, the judge granted plaintiff's motion to enter default judgment and schedule a proof hearing, see R. 4:43-2(b), for which defendants did not appear.

At the proof hearing conducted on August 10, 2020, plaintiff testified that on September 17, 2018, she began working for The Gift Group, Inc. as a gift basket assembler. When plaintiff was hired, she did not sign an employment contract. However, she was a full-time, hourly employee and earned $12 an

hour. She was paid biweekly, but payment for the first two weeks of work was "withheld" by defendants.

Around Thanksgiving, plaintiff began working more than forty hours per week due to an increase in orders. In the first two weeks of December, plaintiff worked approximately forty-four hours each week. In the third week of December, she worked approximately forty-eight hours. Plaintiff did not receive overtime compensation for the additional hours worked.

According to plaintiff, she and other employees raised the overtime issue with their supervisor, but the supervisor "didn't believe that [the employees] should be compensated for overtime, because in Canada [employees] only start making overtime at [forty-eight] hours."[1] As a result, the supervisor "made sure to keep [the employees] all under [forty-eight] hours" to comply with "the Canadian time and a half" requirement. Plaintiff testified she and other employees tried to convince the supervisor that, in the United States, hourly employees were owed "time and a half" after working forty hours in a week, but to no avail.

In addition, plaintiff had several individual conversations with her supervisor about "pay discrepancies." Specifically, plaintiff talked to her

---

[1] Defendant Loren Drotos is purportedly a Canadian resident.

3

supervisor during the first week of January 2019, and again around January 10, 2019. Plaintiff testified that following the January 10 conversation, her supervisor said she would receive the owed overtime as well as $200 of missing pay at the end of the week, as one paycheck had been short by $200. That Friday, when plaintiff did not receive the amount she was due, she again spoke to her supervisor and demanded her overtime and missing pay. Plaintiff's supervisor responded she would receive the overdue wages the following Monday, January 14, 2019. However, on Sunday, January 13, 2019, plaintiff received a text message from an unknown sender saying she was terminated, and the police would be called if she showed up for work. When plaintiff received her last paycheck, it was missing compensation for three weeks and three days of work as well as the $200 and the overtime hours she was owed.

Plaintiff explained she "went above and beyond to try to make [defendants'] business successful." She believed she was not "fired for not doing [her] job" but "for telling them . . . about [her] job." Plaintiff testified the circumstances of her termination "led to . . . severe anxiety." She stated her anxiety adversely affected her "confidence in getting back out there in the workplace." However, she was ultimately able to find new employment on October 8, 2019.

A-0326-20

Following the proof hearing, the judge entered an order on August 31, 2020, awarding plaintiff damages totaling $2,191[2] under the FLSA on her unpaid wages and overtime claims. The judge found plaintiff had demonstrated she performed her duties as "an at-will employee of [d]efendant(s), and was not compensated for her wages and overtime work." However, the judge denied plaintiff's claim for liquidated damages. According to the judge, because "there was no demonstration that an employment contract, or any contract, existed between the [p]arties," there was "no demonstration of a contractual breach" to allow a liquidated damages award. The judge also denied plaintiff's claim for "an award of . . . emotional distress damages" resulting from "alleged willful discriminatory conduct" by defendants. As to counsel fees, the judge reduced the requested amount of $3,635 "by twenty-five percent" to $2,726 plus costs "to align . . . with the final judgment award."

In a supplemental opinion filed October 15, 2020, pursuant to Rule 2:5-1(b), the judge expressly denied plaintiff's CEPA claim because plaintiff "did not submit sufficient evidence" relating to the requisite elements. Specifically, the judge found plaintiff failed to demonstrate "she had a reasonable belief that the employers' conduct was violating either the law, regulation, or public

---

[2] We round all monetary amounts to the nearest dollar.

A-0326-20

policy." The judge stated plaintiff provided insufficient proofs "demonstrating . . . a source of law or public policy that relates to the complained of conduct" and failed to "set forth facts which would support a reasonable belief that a violation of law or public policy occurred."

The judge also determined plaintiff had not engaged in "whistleblowing activity" because she did not report the "misconduct with respect to compensation practices" internally "to other employees within the employers' organization" or to "external" stakeholders. Instead, "[p]laintiff made a reasonable inquiry as to why her paycheck contained an error." The judge also found plaintiff had not established she was fired "in retaliation" for her overtime pay inquiries.

Additionally, the judge clarified the reduction in the counsel fee award. He "determined that the damages recovered were a factor bearing on the reasonableness" of the award "consistent with RPC 1.5" and reasoned "the level of success achieved was sufficient to warrant the reduction of the fee awarded." Further, while plaintiff's counsel had "set forth . . . that the total lodestar amount as the prevailing party was [$3,635] and . . . sought a [fifty percent] lodestar enhancement bringing the lodestar to [$5,452,]" the judge exercised his

discretion in excluding "excessive hours from the lodestar calculation" as well as the enhancement. This appeal followed.

On appeal, plaintiff raises the following points for our consideration:

POINT I[3]

THE TRIAL COURT ERRONEOUSLY FAILED TO APPLY THE STANDARD SET FORTH IN HEIMBACH V. MUELLER[4] TO PLAINTIFF'S CEPA CLAIM, THEREBY COMMITTING ERROR IN FINDING THAT PLAINTIFF HAD NOT ESTABLISHED A PRIMA FACIE CASE OF RETALIATORY DISCHARGE IN VIOLATION OF CEPA.

POINT II

THE TRIAL COURT ERRED WHEN IT FAILED TO AWARD LIQUIDATED DAMAGES TO PLAINTIFF ON HER WAGE CLAIMS.

POINT III

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REDUCED PLAINTIFF'S LODESTAR FEES BY TWENTY-FIVE PERCENT WITHOUT ENGAGING IN THE CAREFUL AND CRITICAL EVALUATION OF THE HOURS EXPENDED BY COUNSEL REQUIRED BY RENDINE V. PANTZER.[5]

---

[3] We have condensed the point heading to eliminate redundancy.

[4] 229 N.J. Super. 17 (App. Div. 1988).

[5] 141 N.J. 292 (1995).

A-0326-20

Generally, judgment against a defaulting defendant should be granted unless a court finds after a proof hearing that "some necessary element of plaintiff's prima facie case was missing or because plaintiff's claim was barred by some rule of law whose applicability was evident either from the pleadings or from the proofs presented." Heimbach, 229 N.J. Super. at 23-24 (footnote omitted). At the proof hearing, "the court should ordinarily apply the prima facie standard to plaintiff's proofs, thus not weighing evidence or finding facts but only determining bare sufficiency." Kolczycki v. City of East Orange, 317 N.J. Super. 505, 514 (App. Div. 1999). That exercise is "mechanical" and "[t]he trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably" to plaintiff. Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969) (discussing analogous burden of proof applicable to motion for involuntary dismissal under Rule 4:37-2).

Turning to the substantive principles, to establish the prima facie elements of a CEPA claim, a plaintiff must demonstrate:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in [N.J.S.A. 34:19-3(a) or (c)]; (3) [a retaliatory] action was taken against him or her; and (4) a causal connection exists

between the whistle-blowing activity and the [retaliatory] employment action.

[Turner v. Associated Humane Soc'ys, Inc., 396 N.J. Super. 582, 592 (App. Div. 2007) (first alteration in original) (quoting Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003)).]

Protected whistle-blowing activities include "disclos[ing] to a supervisor . . . an activity, policy or practice of the employer . . . the employee reasonably believes . . . is in violation of a law" and objecting to "any activity, policy or practice which the employee reasonably believes . . . is in violation of a law." N.J.S.A. 34:19-3(a) and (c). "CEPA 'does not require a plaintiff to show that a law . . . actually would be violated if all the facts he or she alleges are true. Instead, a plaintiff must set forth facts that would support an objectively reasonable belief that a violation has occurred.'" Turner, 396 N.J. Super. at 593 (quoting Dzwonar, 177 N.J. at 464).

Furthermore, CEPA defines retaliatory action as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2(e). "The requirement that an employee who brings a CEPA claim under N.J.S.A. 34:19-3 must show 'a causal connection exists between the whistle-blowing activity and the adverse employment action[,]' can be satisfied by

9

inferences that the trier of fact may reasonably draw based on circumstances surrounding the employment action." Maimone v. City of Atl. City, 188 N.J. 221, 237 (2006) (alteration in original) (quoting Dzwonar, 177 N.J. at 462) (citation omitted). "The temporal proximity of employee conduct protected by CEPA and an adverse employment action is one circumstance that may support an inference of a causal connection." Ibid.

CEPA's "requirements must be liberally construed to effectuate CEPA's important social goals." Id. at 230. "[A] prevailing plaintiff in a CEPA action is entitled to '[a]ll remedies available in common law tort actions.'" Longo v. Pleasure Prods., Inc., 215 N.J. 48, 57 (2013) (quoting N.J.S.A. 34:19–5). Indeed, "[t]he statute specifically permits compensatory and punitive damages." Ibid.

Plaintiff contends she established a prima facie "CEPA claim for purposes of assessing liability against a defaulted defendant" because it is conceivable a jury could find defendants fired her in response to her complaints to her supervisor that she was entitled to overtime pay after working more than forty hours in a week as required by law in the United States. We agree. Plaintiff testified defendants refused to pay employees overtime not exceeding the forty-eight hour per week threshold for overtime in Canada. Plaintiff made a series

of verbal complaints to her supervisor concerning defendants' purported wage law violation and was terminated shortly thereafter.  Viewing plaintiff's proofs "indulgently" as we are required to do and limiting our inquiry to whether plaintiff presented a prima facie case satisfying all elements of the cause of action, Heimbach, 229 N.J. Super. at 20, we are satisfied the judge erred in dismissing plaintiff's CEPA claim.

Turning to the FLSA claim, the FLSA provides that an employer "who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b) (emphasis added).  Section 206 establishes the minimum hourly wage for workers "engaged in commerce or in the production of goods for commerce," and section 207 sets the minimum overtime rate at "not less than one and one-half times the regular rate" for hourly employees who work more than forty hours in a week.  The FLSA also provides employers may avoid paying liquidated damages by demonstrating to the court that their wage violations were based upon reasonable, good faith errors.  29 U.S.C. § 260.

11

Similarly, under the WPL, an employer who "fails to pay the full amount of wages to an employee" is liable for the unpaid wages "plus an amount of liquidated damages equal to not more than 200[%] of the wages lost or of the wages due, together with costs and reasonable attorney's fees." N.J.S.A. 34:11-4.10(c). The WPL also allows an employer to avoid paying liquidated damages for first violations if the employer: (1) shows the court the violation was an "inadvertent error made in good faith"; (2) "had reasonable grounds for believing that the act or omission was not a violation"; and (3) acknowledges the violation and pays what is owed within thirty days' notice of the violation. Ibid.

Here, the judge denied plaintiff's liquidated damages claim because "there was no demonstration that an employment contract, or any contract, existed between the [p]arties." That was error. Neither the FLSA nor the WPL requires an employment contract for an employee to recover liquidated damages for wage law violations. See 29 U.S.C. § 216(b); N.J.S.A. 34:11-4.10(c). The judge determined defendants had violated the FLSA by failing to pay minimum and overtime wages. Accordingly, defendants were liable for liquidated damages, unless they were able to show they had acted in good faith and had reasonable grounds to believe their pay practices did not violate the law. See 29 U.S.C. §

12

260. Likewise, defendants were required to pay liquidated damages for unpaid wages under the WPL, absent a showing of good faith and other factors delineated in the statute. See N.J.S.A. 34:11-4.10(c). However, defendants lost their opportunity and ability to advance such affirmative proofs in defense of the claim because of their default and failure to appear at the proof hearing. Chakravarti v. Pegasus Consulting Grp., Inc., 393 N.J. Super. 203, 210-11 (App. Div. 2007) ("[A] defendant who has defaulted has relinquished the right to present affirmative proofs in the matter . . . ."). Accordingly, plaintiff was entitled to liquidated damages under the FLSA and the WPL.

Given our decision that plaintiff's damages award must be recalculated, we also reverse the judge's award of attorney's fees and remand the matter for reconsideration, applying the principles governing such awards set forth in Rendine, 141 N.J. at 343 (concluding "that contingency enhancements in fee-shifting cases ordinarily should range between five and fifty-percent of the lodestar fee, with the enhancement in typical contingency cases ranging between twenty and thirty-five percent of the lodestar").

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION