

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-11-2005

# Zaffuto v. Wal Mart Stores Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2989

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Zaffuto v. Wal Mart Stores Inc" (2005). *2005 Decisions.* Paper 1207.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1207

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 04-2989

———

STEPHEN J. ZAFFUTO,
Appellant

v.

WAL-MART STORES, INC.

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 02-cv-04953)
District Judge:  Hon. Joseph H. Rodriguez

———

Submitted Under Third Circuit LAR 34.1(a)
May 9, 2005

Before:  SLOVITER and FISHER, Circuit Judges, and
POLLAK, District Judge*

(Filed: May 11,2005)

———

OPINION

———

---

* Hon. Louis H. Pollak, Senior Judge, United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

SLOVITER, Circuit Judge.

Prior to his termination in 2002, Stephen J. Zaffuto worked for Sam's Club, a chain of members-only warehouse-style stores owned and operated by Wal-Mart Stores, Inc. ("Wal-Mart"). Zaffuto brought this action pursuant to New Jersey's Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. §§ 34:19-1 et seq., claiming that Wal-Mart terminated him for repeatedly complaining to his superiors that the optical centers in several Sam's Club stores were being operated in violation of law. For its part, Wal-Mart claims that it did not terminate Zaffuto because of his whistle-blowing activities but rather because he borrowed money from his subordinates and because he lied about his residence in order to obtain a higher cost-of-living adjustment to his salary. Following the conclusion of discovery, the District Court granted summary judgment in favor of Wal-Mart.

The District Court had jurisdiction under 28 U.S.C. § 1332; this court has jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons explained below, we will affirm.

## I.

The record shows the following: On August 29, 2000, Zaffuto was hired as the manager of the optical center in the Sam's Club store in Harrisburg, Pennsylvania and a year later, he was promoted to the level of District Manager. As District Manager, Zaffuto was responsible for the Sam's Club optical centers in several northeastern states,

including New Jersey. Wal-Mart opened new optical centers in three New Jersey Sam's Club stores between June 2001 and April 2002.

Eventually, Zaffuto came to believe that Wal-Mart was violating New Jersey law by (1) failing to provide these new optical centers with two pieces of legally required equipment and by (2) allowing unlicensed employees at these stores to perform activities that, by law, could only be performed by licensed opticians. In February 2002, Zaffuto raised these concerns with his Regional Manager, Carolyn Hetrick, and his Regional Personnel Manager, Michelle Medlin. Thereafter, Zaffuto repeated his concerns and complaints on numerous occasions to these and other high-level individuals at Wal-Mart. According to Zaffuto's Complaint, however, Wal-Mart "was adamant about not changing the practices or policies . . . [and was] more concerned with potentially having to increase costs rather than complying with the law." App. at 179.

When Zaffuto was promoted to the District Manager position in August 2001, Wal-Mart provided him with a company credit card. Zaffuto quickly fell behind in submitting the necessary paperwork and payments for the card. As a result, Hetrick met with Zaffuto on April 22, 2002 for a corrective meeting called, in Wal-Mart's parlance, a "decision-making day," App. at 111, at which Hetrick provided Zaffuto with a formal written warning regarding the credit card. She further advised Zaffuto that, consistent with Wal-Mart policy, if he failed to remedy the situation, the next level of corrective action was termination. Thereafter, Zaffuto agreed to manage his company credit card

3

account in a proper manner.

In August 2002, Colleen Pearl, one of Zaffuto's supervisees, contacted Hetrick and informed her that Zaffuto had borrowed money from Pearl and that he had falsely reported his residence to Wal-Mart. Zaffuto's superiors thereafter initiated an investigation into these allegations. Jay Volinsky, a manager in Zaffuto's district, reported that Zaffuto had borrowed money from him to pay off his company card. Volinsky further stated that he had helped Zaffuto move to a Pennsylvania address earlier that year but that Zaffuto had told him that he was reporting a New Jersey address to Wal-Mart in order to obtain the higher cost-of-living adjustment applicable for New Jersey employees. Other witnesses and documents, including a phone record of calls placed with Zaffuto's company calling card, corroborated these allegations.

Upon reviewing the results of the investigation, Zaffuto's superiors determined that either charge--borrowing funds from subordinates or falsely claiming a New Jersey residence for an increased cost-of-living adjustment--would be sufficient to warrant termination. Thus, Hetrick, accompanied by District Loss Prevention Supervisor Chuck McDowell, met with Zaffuto on September 3, 2002, at which time they informed him of the information gathered by the investigation. Although Zaffuto denied any wrongdoing, he was terminated.

Zaffuto brought this action, claiming that Wal-Mart had violated the CEPA by firing him because of his complaints and agitation regarding its purportedly unlawful

4

activities. Following the close of discovery, Wal-Mart moved for summary judgment, which the District Court granted. This timely appeal followed.

## II.

We review a district court's grant of summary judgment <u>de novo</u>, applying the same standard as did the district court. <u>Hubbard v. Taylor</u>, 399 F.3d 150, 157 n.12 (3d Cir. 2005); <u>Union Pac. R.R. Co. v. Greentree Transp. Trucking Co.</u>, 293 F.3d 120, 125 (3d Cir. 2002). Summary judgment is appropriate where there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Summary judgment, however, must not be granted where there is a genuine dispute about a material fact, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

## III.

The New Jersey Legislature enacted CEPA to "protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." <u>Dzwonar v. McDevitt</u>, 828 A.2d 893, 900 (N.J. 2003) (internal citation and quotations omitted). A CEPA plaintiff must prove four elements:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity .

5

. . ;  (3) an adverse employment action was taken against him or her;  and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

Dzwonar, 828 A.2d at 900.  For purposes of summary judgment, Wal-Mart concedes that Zaffuto has presented sufficient evidence from which a reasonable trier of fact could find the first three elements of his CEPA claim.  Thus, as is true "in most CEPA cases," resolution of Zaffuto's appeal "turn[s] on the fourth element:  evidence of a causal connection."  Donofry v. Autotote Sys., Inc., 795 A.2d 260, 269 (N.J. Super. Ct. App. Div. 2001).

A CEPA plaintiff can prove causation by presenting either direct evidence of retaliation or circumstantial evidence that justifies an inference of retaliation.  Romano v. Brown & Williamson Tobacco Corp., 665 A.2d 1139, 1143 (N.J. Super. Ct. App. Div. 1995).  In circumstantial evidence cases, New Jersey courts apply the burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny.  Fleming v. Corr. Healthcare Solutions, Inc., 751 A.2d 1035, 1041 (N.J. 2000).  Therefore, a plaintiff in Zuffato's position must first make out a prima facie case of retaliation.

> [O]nce the employee has made a prima facie showing of [retaliation], the burden of going forward shifts to the employer who must articulate a legitimate, non[retaliatory] reason for the adverse employment decision. If the employer does produce evidence showing a legitimate, non[retaliatory] reason for the discharge, the burden of production shifts back to the employee who must show that the employer's proffered explanation is incredible.

6

<u>Fleming</u>, 751 A.2d at 1041. It is important to note that the burden of proof remains on the plaintiff throughout this process. <u>Id.</u>

Wal-Mart argues that Zaffuto has met neither the prima facie requirement of causation nor his ultimate burden of proof on the issue. Zaffuto, in contrast, argues that he has presented sufficient evidence to survive summary judgment. As recognized by the New Jersey courts, the prima facie element of causation and the element of causation in the subsequent ultimate proof stage of the case are often factually inseparable and therefore a court may rely on evidence provided in the earlier phase in resolving the latter. <u>Donofry</u>, 795 A.2d at 270 (citing <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 147 (2000)); <u>see also</u> App. at 16. Thus, a plaintiff's circumstantial evidence of retaliation may include evidence that "'demonstrate[s] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-[retaliatory] reasons.'" <u>Kolb v. Burns</u>, 727 A.2d 525, 531 (N.J. Super. Ct. App. Div. 1999) (<u>quoting</u> <u>Fuentes v. Perskie</u>, 32 F.3d 759, 765 (3d Cir. 1994)).

Wal-Mart has proffered two legitimate nonretaliatory reasons for its termination decision: (1) that Zaffuto borrowed money from his subordinates in order to pay his corporate credit card bill and (2) that Zaffuto falsely reported a New Jersey residence in order to obtain a higher cost-of-living adjustment to his salary. Upon our plenary review

7

of the record, we find that Zaffuto has failed to raise any triable issues of material fact to support a finding that these proffered legitimate reasons are pretextual.

Zaffuto first argues that Wal-Mart's reasons for firing him were inconsistent, and that this casts doubt on its proffered justifications for doing so. He notes that at the "decision-making day," he was given a written admonition for failure to resolve in a timely fashion the issue of his company credit card bill and was told that the next step for failure to correct that problem would be termination. App. at 111. Zaffuto points out that although he resolved the issue and had no subsequent problems or disciplinary actions regarding the timely payment of his account, Wal-Mart fired him claiming two other reasons--misrepresenting his residence and borrowing money from subordinates. Zaffuto argues that because Wal-Mart fired him for reasons other than the one set forth in the written admonition, it acted inconsistently and that this cast doubt on the legitimacy of the proffered justifications.

He also notes that Hetrick initiated the corrective process with respect to the credit card at a "decision-making day," rather than by way of a less-severe "verbal" or "written coaching." Br. of Appellant at 7. He claims that this was in violation of Wal-Mart's internal policy and that Wal-Mart's failure to follow its usual process adds to Wal-Mart's lack of credibility.

We conclude that neither of these related reasons raises a genuine issue of material fact with respect to Wal-Mart's reasons for firing Zaffuto. There is no requirement that

8

Wal-Mart's disciplinary procedures must begin at a specific point. Rather, supervisors may invoke more or less severe levels of corrective protocol based on the seriousness of the misbehavior at issue. See App. at 49. Neither Zaffuto's termination for a reason other than continued credit card tardiness nor Wal-Mart's proceeding directly to a decision-making day in addressing the credit card issues suggests that Wal-Mart's proffered reasons for ultimately terminating him are pretextual. Rather, the record merely shows without contradiction that Zaffuto had problems keeping his company credit card payments up to date and that his employer disciplined him for it.

Zaffuto's next argument is that in concluding that he had acted improperly, Wal-Mart both relied on the reports of several people who had reason to be biased against him and ignored the statements of others who had nothing negative to report.

Zaffuto argues that Pearl, who contacted Hetrick to lodge several complaints about Zaffuto, had a motive to lie about him because she was not performing her job adequately and was herself in danger of termination. He further notes that he informed Hetrick of Pearl's shortcomings prior to the investigation and that Hetrick should therefore have discounted Pearl's allegations.

Similarly, Zaffuto disputes Volinsky's credibility and argues that Volinsky, who had claimed that Zaffuto had borrowed money from him, in fact borrowed money from Zaffuto. Zaffuto asserts that Volinsky had a motive to lie because Zaffuto knew that Volinsky had been misappropriating Wal-Mart property. Zaffuto further claims that his

9

superiors were aware of Volinsky's motive to lie because Zaffuto had reported his misdeeds to them previously.

Zaffuto also argues that Wal-Mart, as well as the District Court, ignored evidence uncovered in the internal investigation that supported his position, such as evidence that another Sam's Club manager in Zaffuto's district told Medlin that he believed that Zaffuto's home/office was in New Jersey, rather than Pennsylvania, and that Zaffuto had never asked to borrow money from him. Zaffuto similarly points out that two other Sam's Club managers stated that Zaffuto had never sought a loan from them.

Even accepting Zaffuto's argument that certain employees were biased against him and viewing the evidence in the light most favorable to Zaffuto, the facts he presents are insufficient to allow a factfinder to conclude that Wal-Mart's proffered reasons for terminating Zaffuto are pretextual. They do not raise "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Fuentes, 32 F.3d at 765. Similarly, information from the other Sam's Club managers to the effect that Zaffuto had never borrowed money from them, even taken in the light most favorable to Zaffuto, proves only that he never sought a loan from any of those individuals. It would hardly be reasonable to conclude from this that Wal-Mart should have then disbelieved all other information that it had obtained indicating that he had borrowed money from others, or, more importantly, that Wal-Mart's proffered

10

explanation of its termination decision is pretextual.

As to Zaffuto's residence, the records of the telephone calls charged to his corporate calling card account show that a vast majority of such calls had been made from a number in Pennsylvania and that the calls from Zaffuto's purported New Jersey number were usually made at times when he would have been traveling for business. Wal-Mart construed these records as further proof that Zaffuto was actually living in Pennsylvania rather than New Jersey. Zaffuto argues that because Wal-Mart did not seek his side of the story, a factfinder could conclude that Wal-Mart's proffered justifications are pretextual.

Even if, as Zaffuto claims, the calling card records reflect a high number of calls made from Pennsylvania because he had given his card to his wife who maintained a Pennsylvania residence, Wal-Mart's failure to seek his side of the story is not probative on the issue of pretext. Our inquiry is not whether Wal-Mart's justification for terminating Zaffuto was based on accurate information, but only whether a reasonable factfinder could believe that the company is using the justification to hide a retaliatory motive. The phone records, especially considered in light of Zaffuto's explanation that the address in New Jersey where he professed to live was actually his brother's home for which he paid rent, but where he spent little time, gave Wal-Mart a basis to conclude that Zaffuto had misled it about the state of his residence. There is no basis from which to draw a reasonable inference that Wal-Mart's proffered reasons are pretextual.

Finally, Zaffuto argues that his superiors blind-sided him at the September 3, 2002,

11

meeting that ended with his termination because he had no notice of the purpose of the meeting and no advance warning that District Loss Prevention Supervisor McDowell would be present. He further argues that although McDowell and Hetrick gave him an opportunity to explain the situation, they did not give him a chance to marshal evidence on his own behalf.

Zaffuto argues that this raises suspicion about his employer's stated motivations for firing him. Although the failure to provide Zaffuto with an opportunity to present evidence on his own behalf may reasonably suggest that his superiors had decided to terminate Zaffuto prior to the September 3, 2002 meeting, it does not suggest that Wal-Mart's stated justifications for the firing are post hoc rationalizations. Whatever the wisdom of conducting the meeting in the manner Wal-Mart did, the issue is "not whether the employer is wise, shrewd, prudent, or competent," Fuentes, 32 F.3d at 765, but whether its proffered reasons for terminating him are vulnerable to a finding of pretext. There is nothing in the record respecting the September 3, 2002 meeting to support such a conclusion.

## IV.

In sum, we agree with the District Court that Zaffuto has not raised a material issue of triable fact to show that Wal-Mart terminated him because of his whistle-blowing activities. We will therefore affirm the District Court's order granting Wal-Mart's motion for summary judgment.

12