**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1111-17T1

L.M.P.,[1]

    Plaintiff- Appellant,

v.

HIGH POINT REGIONAL HIGH
SCHOOL BOARD OF EDUCATION,
SUPERINTENDENT SCOTT RIPLEY,
and JONATHAN TALLAMY,

    Defendants-Respondents.

_____

Submitted March 27, 2019 – Decided May 6, 2019

Before Judges Koblitz, Currier and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Sussex County, Docket No. L-0108-16.

George T. Daggett, attorney for appellant.

Methfessel & Werbel, attorneys for respondents (Eric L. Harrison, of counsel and on the brief; Ashley E. Malandre, on the brief).

---

[1] We use initials to preserve plaintiff's confidentiality.

PER CURIAM

Plaintiff appeals from the October 17, 2017 order granting defendants' motion for summary judgment regarding her complaint brought under The New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -8 (CEPA). Because plaintiff did not establish a prima facie adverse employment cause of action, we affirm.

Plaintiff filed a complaint on February 23, 2016 alleging a hostile work environment, constructive discharge and violation of CEPA. She began working as a special education teacher at High Point Regional High School (High Point) around 1991. She transferred to the multiple disabilities (MD) program in 2011, a lateral move with no change in contract or salary.

Plaintiff's deposition revealed the following. In 2012, she began complaining on behalf of her students about perceived violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 to 12213, and the New Jersey Special Education Code, N.J.A.C. 6A:14-1 to -10, including a lack of preparation for life beyond high school or home instruction, and no choice of school hours. Plaintiff reported to Superintendent Scott Ripley, Principal Jonathan Tallamy (defendants), the Director of Special Education and the case manager closely associated with the MD program, "several times" that the

2

school was "violating the law." In summer 2013, plaintiff was removed from teaching the extended school year (ESY) program, where she was previously assigned for the entire summer. She did not file a formal grievance regarding the ESY program because it was not contractually guaranteed. Only two teachers were assigned to the program for ten days each that summer.

During the 2013 to 2014 school year, plaintiff again complained about a lack of transition services for her students, pointing to a program that formerly allowed students to visit Sussex County Association of Retarded Citizens (SCARC) to prepare for transitioning out of high school. After successfully advocating on behalf of her students, she enrolled three students in a transition program. Later, plaintiff received notice that another student seeking transition services was not eligible because she used a feeding tube. After plaintiff spoke out, the student was enrolled in the SCARC transition program.

In summer 2014, plaintiff was assigned to only ten days of the ESY program. She alleges she was deprived of a $2500 stipend as a result. Other teachers were similarly assigned to either ten or fewer days of the ESY program.

During the 2014 to 2015 school year, as occurred with other teachers, plaintiff's sixth period class transitioned into a "supervisory" period, and plaintiff's stipend for teaching during this period was eliminated. She did not

file a formal grievance regarding the sixth period class because it was not contractually guaranteed.

In January 2015, plaintiff sought a residency waiver to continue teaching at the high school, required because she planned to move to Pennsylvania. She needed a "critical need letter" from a superintendent, principal or board member. When she asked Ripley to write such a letter on her behalf, he said he was uncomfortable doing so because it was his understanding that such letters were to be reserved for "extreme and acute concerns."

Plaintiff contacted a board member, who then contacted Ripley on her behalf. The following day, Ripley called plaintiff to his office for a meeting. Plaintiff brought a union representative with her to the meeting. At the meeting, Ripley began to yell at her, which caused plaintiff great consternation. Plaintiff testified that after Ripley left the room, she was "visibly shaken" and "thought [she] was having a panic attack." Plaintiff was told to go home and her doctor prescribed Xanax.

Plaintiff received a letter of apology from the union president, and then an email from Ripley stating he would write the critical need letter. In February 2015, Ripley wrote the letter and plaintiff received a residency waiver.

A-1111-17T1

Shortly thereafter, one of plaintiff's students died, and Ripley "[gave] [plaintiff] a hard time about" attending the funeral because she had used up her personal days. She was the only one of her colleagues to receive delayed approval to attend.

In March 2015, Ripley announced he would be recommending to the board that the MD program "should be eliminated as it was no longer sustainable."[2] Many members of the public attended an April 2015 board meeting to speak out against elimination of the program. In May 2015, the district "began exploring other options including the outsourcing of the program," which Ripley believed "could be a sustainable option."

Plaintiff was assigned as a special education teacher for the 2015 to 2016 school year, and given a schedule of classes she had not taught "for a number of years." Plaintiff did not file a formal grievance regarding the change. Within a few hours of receiving the schedule, she attempted suicide by overdosing on her medication[3] and drinking two glasses of wine. Plaintiff was diagnosed with

---

[2] Ripley alleged an analysis of the MD program showed it cost about $100,000 per student and only three students were enrolled.

[3] Plaintiff testified she was on multiple medications, which cause memory loss. She stated she has trouble "processing" and "us[ing] the right words."

post-traumatic stress disorder, manic depression disorder, anxiety, fibromyalgia, neuropathy, and a stroke. A few days later, on June 16, 2015, plaintiff filed a disability retirement application, indicating she could no longer work due to the death of her student.[4]

After negotiations for outsourcing the MD program fell through, the district "pursued an alternative plan, which ultimately included keeping the program within the [d]istrict." Ripley certified he was never made aware of plaintiff's complaints and that "as a tenured employee, [plaintiff] would have continued to be employed with no reduction in salary regardless of the destiny of the MD program."

On November 13, 2015, plaintiff's disability retirement application was denied. On February 23, 2016, plaintiff filed a complaint alleging a hostile work environment, constructive discharge and violation of CEPA. She alleged she

---

[4] Plaintiff's application states: "The death of my student changed my life forever. I was admitted to an outpatient psychiatric hospital for suicidal thoughts and intentions to hurt school administrators who did not care that I just lost a daughter. . . . I have recurring nightmares about killing the administrators who failed to give me time to grieve; for example, not giving me time off for her funeral. Within hours of her death, the administration notified me that next year's program was being disbanded. . . . I am on heavy psychotropic medication. I cannot concentrate, my memory is a blur, I can't complete simple tasks, nor can I be left alone. I pray that with months or even years of mental health treatment that I can become useful."

suffered a loss of $8000 due to the elimination of her sixth period class, and $2500 due to the reduction of her ESY assignment.

The court initially granted defendants' motion for summary judgment in part only, explaining:

> The cause of [p]laintiff's retirement is unclear. It could mostly be related to the tragedy of losing her student, it could be related to the alleged rude way her superiors treated her, it c[ould] be related to the threatened loss of the MD program, and it could be mostly related to something else. [This] is an issue of material fact with respect to the cause of [p]laintiff's departure, so summary judgment is not appropriate.

The motion court nonetheless granted summary judgment regarding plaintiff's claims relating to her sixth period class and reduction of days in the ESY program, because they were time-barred by the one-year statute of limitations. See N.J.S.A. 34:19-5. The court concluded the doctrine of continuing violation did not apply. See Wilson v. Wal-Mart Stores, 158 N.J. 263, 271-74 (1999) (where a plaintiff establishes a continual pattern of adverse action, a trial court may toll the statute of limitations until the adverse action ceases); see also Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 21 (2002) (distinguishing between "a pattern or series of acts, any one of which may not be actionable as a discrete act, but when viewed cumulatively constitute

7

a hostile work environment," which will trigger the doctrine, and "discrete acts of discriminatory conduct," which will not).  The court stated:

> Plaintiff translates each claim into a dollar amount and aggregates the dollar amounts to contribute to her total demand for damages, but each alleged discriminatory action would be discrete because [p]laintiff ties an identifiable amount of money to each action and each action could stand alone without the need to establish a pattern.  Plaintiff's loss of pay, loss of her sixth-period class, and loss of days to work in the [ESY] program are each discrete actions and are time-barred from the instant litigation.

Upon reconsideration, the motion court ultimately granted summary judgment to defendants as to the entire complaint, concluding plaintiff failed to establish the third requirement under Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003), which requires a showing that an adverse employment action was taken:

> Plaintiff fails to prove a prima facie case under CEPA because she fails to prove the third prong of the test. See N.J.S.A. 34:19-3.  Although [p]laintiff's motivations for retiring are unclear, none of the motivations are sufficient to make her departure actionable under CEPA.  Neither the alleged rude way her superiors treated her nor the threatened loss of the MD program are formal disciplinary actions having [an] effect on either compensation or job rank, or actions "virtually equivalent to discharge."  See [Hancock v. Borough of Oaklyn, 347 N.J. Super. 350, 360 (App. Div. 2002) (quoting Zamboni v. Stamler, 847 F.2d 73, 82 (3d Cir. 1988))].  Even though . . . Ripley . . . incorrectly said that [p]laintiff would not be able to work in the MD [p]rogram, [p]laintiff still had a job, in

a position as a teacher, the same title she previously held at the same salary. The threatened loss of the MD program is not a completed action. See [Klein v. University of Medicine and Dentistry of N.J., 377 N.J. Super. 28, 46 (App. Div. 2005)]. There is no dispute that no [b]oard resolution was ever passed to either outsource or eliminate the program. Additionally, the claim that Ripley initially refused to sign a critical needs letter for [p]laintiff is not a completed act, as Ripley eventually signed the letter, and even shows that Ripley eventually remedied the situation. See [Beasley v. Passaic County, 377 N.J. Super. 585, 607 (App. Div. 2005)]. Similarly, although Ripley initially did not provide leave for [p]laintiff to attend the funeral of a student, he eventually remedied the situation by allowing her to use leave time. See [ibid.] Therefore, there was no completed action which could be deemed an adverse employment action.

The motion court also rejected plaintiff's argument that she was constructively discharged, reasoning that Ripley advising plaintiff the MD program was eliminated does not rise to the level of "knowingly permit[ting] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." See Shepherd, 174 N.J. at 27-28 (quoting Muench v. Township of Haddon, 255 N.J. Super. 288, 302 (App. Div. 1992)). "The only completed act that is not time barred, is the time Ripley allegedly yelled at [p]laintiff, and called her 'unprofessional.' This act by itself is not sufficient to show a pattern of retaliatory acts. See [Beasley, 377 N.J. Super. at 609]."

We review a trial court's summary judgment disposition de novo based upon an independent review of the motion record, and applying the same standard as the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015). A court should grant summary judgment if the record establishes there is "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46–2(c). We "review the facts in the light most favorable to" the non-moving party. DiProspero v. Penn, 183 N.J. 477, 482 (2005) (citing R. 4:46-2(c)).

Plaintiff argues she was tricked into retirement when defendants changed the terms of her employment by assigning her to teach classes she had not taught recently. Plaintiff argues the language of N.J.S.A. 34:19-2(e), "other adverse employment action taken against an employee," is inclusive of plaintiff's class reassignment.

Pursuant to CEPA:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following:
>
> a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . or

(2) is fraudulent or criminal . . . ;

b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer . . . or

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ;

(2) is fraudulent or criminal . . . or

(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

[N.J.S.A. 34:19-3.]

To bring a claim under CEPA, a plaintiff must demonstrate:

(1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c); (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

[Dzwonar, 177 N.J. at 462.]

Retaliatory action is defined as "discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment."  N.J.S.A. 34:19-2(e).  Adverse action must be "virtually equivalent to discharge."  Hancock, 347 N.J. Super. at 360 (quoting Zamboni, 847 F.2d at 82).  Additionally, "'[r]etaliatory action' does not encompass action taken to effectuate the 'discharge, suspension or demotion,'" but rather "speaks in terms of completed action."  Keelan v. Bell Commc'ns Research, 289 N.J. Super. 531, 539 (App. Div. 1996).  Our Supreme Court explained:

> What constitutes an "adverse employment action" must be viewed in light of the broad remedial purpose of CEPA, and our charge to liberally construe the statute to deter workplace reprisals against an employee speaking out against a company's illicit or unethical activities.  Cast in that light, an "adverse employment action" is taken against an employee engaged in protected activity when an employer targets him for reprisals -- making false accusations of misconduct, giving negative performance reviews, issuing an unwarranted suspension, and requiring pretextual mental-health evaluations -- causing the employee to suffer a mental breakdown and rendering him unfit for continued employment.
>
> [Donelson v. DuPont Chambers Works, 206 N.J. 243, 257-58 (2011).]

The parties agree plaintiff has met the first two requirements of CEPA. See Dzwonar, 177 N.J. at 462.  Plaintiff did not meet the third requirement, adverse employment action, despite her contention that defendants assigned her to teach classes she had not taught in a number of years, because such action is not "virtually equivalent to discharge."  See Hancock, 347 N.J. Super. at 360 (quoting Zamboni, 847 F.2d at 82).  Viewing the facts in a light most favorable to plaintiff, although plaintiff was treated for mental conditions after Ripley yelled at her, defendants did not engage in "making false accusations of misconduct, giving negative performance reviews, issuing an unwarranted suspension, and requiring pretextual mental-health evaluations." Donelson, 206 N.J. at 258.  To the contrary, Ripley ultimately remedied the situation by writing the critical need letter, vouching for plaintiff as a "valuable employee," which allowed her to obtain a residency waiver.  Moreover, plaintiff did not file a formal grievance regarding her schedule. See Shepherd, 174 N.J. at 29 (granting the defendants summary judgment where the plaintiff did not "do all that was reasonably necessary to remain employed, an additional consideration in this setting").  Plaintiff's argument that she was constructively discharged because Ripley led her to believe the MD program was eliminated does not rise to the level of "knowingly permit[ting] conditions of discrimination in employment so

A-1111-17T1

intolerable that a reasonable person subject to them would resign."  See id. at 27-28 (quoting Muench, 255 N.J. Super. at 302).  Plaintiff failed to show that adverse employment action was taken against her by defendants.  See Dzwonar, 177 N.J. at 462.

Plaintiff also argues "even if actions complained of were time-barred, that does not mean that they are not evidential.  N.J.R.E. 404(b) allows evidence of other 'wrongs' to prove 'motive opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.'"  Plaintiff argues her hostile work environment and constructive discharge claims require a court to consider the "entire time period," citing Green v. Jersey City Bd. of Educ., 177 N.J. 434, 447 (2003).

As the motion judge found, the facts here are distinguishable from those in Green, where the Court found a "continual, cumulative pattern of tortious conduct" sufficient to trigger the doctrine of continuing violation regarding the plaintiff's hostile work environment claim.  See id. at 446-47.  Plaintiff was successful in her advocacy on behalf of her students, and was treated similarly to other teachers with regard to her employment assignments.

After a thorough review of the record, we affirm substantially for the reasons articulated by the motion judge.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1111-17T1