**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2569-17T2

CHERESE BLANKS,

    Plaintiff-Appellant,

v.

COMCAST CABLE, JONATHAN
BEER, and SEAN PASTICK,

    Defendants-Respondents.

_____

           Argued February 13, 2019 – Decided July 18, 2019

           Before Judges Fuentes, Accurso and Vernoia.

           On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-1539-16.

           Deborah Lynn Mains argued the cause for appellant (Costello & Mains, LLC, attorneys; Deborah Lynn Mains, on the brief).

           Frank Anthony Chernak argued the cause for respondents (Montgomery Mc Cracken Walker & Rhoads, LLP, attorneys; Frank Anthony Chernak and Erin K. Clarke, on the brief).

PER CURIAM

Plaintiff Cherese Blanks appeals from the Law Division's January 5, 2018 order granting defendants Comcast Cable's (Comcast's), Jonathan Beer's, and Sean Pastick's motion for summary judgment on plaintiff's claims that defendants violated the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, by terminating plaintiff's employment in retaliation for her complaints of a co-worker's alleged fraudulent absence and marijuana use, as well as her complaint that another co-worker assaulted her. Because the motion court did not find facts and make the requisite conclusions of law in accordance with Rule 1:7-4(a), we vacate the January 5, 2018 order and remand for further proceedings consistent with this opinion.

I.

Because we consider the court's order granting summary judgment, we detail the undisputed facts before the motion court and consider those facts in the light most favorable to plaintiff, the party opposing defendants' motion for summary judgment. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); R. 4:46-2(c).

Plaintiff became a Comcast employee in 2011. Commencing in September 2014, plaintiff began receiving numerous disciplinary "Corrective Action" notices from Comcast regarding her attendance and conduct at work.

A-2569-17T2

For example, plaintiff received a "Written Warning" on April 29, 2014, after she "ha[d] personal and domestic issues with a fellow employee," her second such incident in the workplace, which was in "direct violation of the Code of Ethics and Business Conduct Policy" established by Comcast. Plaintiff's disciplinary issues culminated in a May 16, 2015 "Final Written Warning," which notified plaintiff that if her conduct failed to meet Comcast's expectations then "further corrective action may be taken, up to and including termination." Plaintiff's "Final Written Warning" remained in effect until November 16, 2015.

On the morning of November 8, 2015, plaintiff's co-worker and friend, Lisa Ruffin, told plaintiff that a balloon Ruffin had been given by her boyfriend and that was on her desk had been popped by someone. Several others in the office told Ruffin their co-worker, Javiyer Spencer, had popped the balloon. Ruffin and plaintiff confronted Spencer about the balloon, but she denied popping it. Another co-worker, Kiara Upsher, became involved, raising her voice and telling Ruffin she did not "have any proof that [Spencer] popped [her] balloon, and even if she did, why would it matter?" Ruffin told Upsher, "[t]his isn't about you," and returned to her desk.

Plaintiff believed Ruffin was upset by the encounter and tried to convince Ruffin to take a break with her. Ruffin rebuffed her, but plaintiff implored

A-2569-17T2

Ruffin to get her "fucking cigarettes" and walk outside with plaintiff. Upsher then approached Ruffin's desk, told Ruffin there was nothing Ruffin could do if Spencer popped the balloon, and when Ruffin asked Upsher to leave her desk, Upsher leaned over Ruffin's desk and asked Ruffin what she was going to do about it. When Ruffin stood up, plaintiff positioned herself between the two women.

Upsher placed both of her hands on plaintiff's left arm and shoved her to the side with enough force to cause plaintiff to momentarily lose her balance, but not fall. Plaintiff told Upsher not to touch her, then repositioned herself between Upsher and Ruffin and said, "[y]ou two have kids, you're both mothers, it's not worth it." A co-worker, Cheryl Herbert, stood up and told the women to "get back to work and to separate." Another co-worker, Christina Davis, accused plaintiff of "feeding into" the incident.

Plaintiff, Ruffin, and Upsher were then separated. Plaintiff walked outside, followed by Ruffin, and their supervisors Michael James and Kathy Vazquez, who asked the two women what had happened. After briefly listening to their description, Vazquez and James instructed plaintiff and Ruffin to provide written reports about the incident and then to go home for the remainder of the day. Upsher was also sent home for the remainder of the day.

A-2569-17T2

Plaintiff wrote her report in an email to Barbara Davis, Comcast's Senior Manager for Fulfillment. In that email plaintiff described the incident, and opined that Spencer popped Ruffin's balloon in retaliation for Ruffin's prior report to Davis that Spencer had, on one occasion, clocked into work but left after "[five] minutes," and that Spencer "smokes drugs in the company parking lot on company premises[] during work hours." Plaintiff later sent Davis a follow-up email claiming Upsher "assaulted [plaintiff] by pushing [plaintiff] out of the way."

On November 9, 2015, the day after the incident, plaintiff submitted a complaint through Comcast's internal complaint hotline, "Comcast Listens," in which she reported that Upsher had assaulted her, Spencer smoked marijuana during work hours in the company parking lot, and that on November 1, 2015, Spencer reported to work for five minutes, left, and attempted to be paid for an entire day's work.

Davis notified Jonathan Beer, Comcast's Human Resources Manager, and Sean Pastick, Comcast's Senior Director of Workforce Operations, about the November 8, 2015 incident on the date it occurred, and later that evening summarized the incident in an email. On November 9, 2015, Beer and Pastick began investigating the incident.

A-2569-17T2

Beer and Pastick first interviewed Spencer, who reported that on the morning of the incident, plaintiff called Spencer a prostitute who "sell[s] [her] body for money," and said that Spencer was mad because she did not "have a man."  Spencer also reported that, shortly before the balloon incident, plaintiff "yelled from her desk '[Spencer] do you got something to say, I[']m going on lunch so we can take this outside.'"  Spencer claimed plaintiff and Ruffin intimidated her, plaintiff called her a "bitch," and that she felt "harassed" by Ruffin and plaintiff.  Spencer also showed Beer a video of the incident that she had recorded on her phone.[1]  Beer testified he thought the recording showed plaintiff escalated the situation and engaged in inappropriate behavior.

Beer and Pastick also interviewed plaintiff on November 9.  Beer and Pastick questioned plaintiff about the incident and why she believed Upsher "assaulted" her.  They also asked plaintiff why she had failed to previously disclose her allegation about Spencer's marijuana use, and plaintiff stated she "felt as though it was not [her] place to say anything at the time" she first learned of the alleged drug use.  Steve Bailey, Comcast's security representative, further questioned plaintiff about her allegation that Spencer smoked marijuana.  Beer

---

[1]  Spencer's video did not show the altercation, but served as an audio recording of the incident.

A-2569-17T2

asked plaintiff why she filed the Comcast Listens complaint, and plaintiff testified there had been previous complaints about Spencer made to upper management but she felt "nothing was being done regarding . . . Spencer's behavior." At the conclusion of their interview, Beer and Pastick informed plaintiff that she was being placed on administrative leave with pay until they concluded their investigation.

Two weeks later, Beer and Pastick notified plaintiff that her employment was terminated. Pastick testified that he and Beer considered plaintiff's role in the balloon incident, her workplace behavior, and plaintiff's "Final Written Warning," which was in effect at the time of the incident. Plaintiff's termination notification specifically noted that she violated Comcast's conduct policy by being "abusive, rude, discourteous or unprofessional . . . by making malicious remarks, insults or epithets or engaging in threatening behavior," by "[d]eliberately interfering with [c]ompany operations," and by "[i]nterfering with any investigation conducted by Comcast including making untruthful or deceptive statements." Comcast also terminated Ruffin's and Upsher's employment. Spencer's employment was later terminated for reasons unrelated to the November 8 incident.

Plaintiff filed a complaint on April 22, 2016, alleging defendants violated CEPA by terminating plaintiff "for disclosing and objecting to conduct which she reasonably believed to be unlawful": namely, that Spencer attempted to get paid for a whole day's work after arriving at work for five minutes, that Spencer allegedly smoked marijuana while at work, and that Upsher assaulted plaintiff. Plaintiff testified she believed her employment was terminated because "[she] went over [her] manager's head and . . . reported issues that concerned [fellow co-workers] and that did not sit well with upper management." Following discovery, defendants moved for summary judgment.

The court heard argument and granted defendants' motion in a decision from the bench. The court did not identify the undisputed material facts but concluded plaintiff failed to make out a prima facie CEPA claim. First, the court concluded that "[t]he report of stealing time . . . hasn't been demonstrated . . . [h]ow this would amount to the plaintiff . . . having a reasonable belief that the employer's conduct was violating a law, rule, or a clear mandate of public policy." Next, the court stated that the "alleged assault and the November 9[] call to the Comcast Listens line . . . fall within the category . . . which indicates that you can't attempt to inoculate yourself from disciplinary action, [by] subsequently making a complaint." The court

"guess[ed]" that plaintiff "attempt[ed] to . . . prophylactically raise these issues, so that if anything is done against her, she can now claim it wasn't done because [she] made these reports," and that plaintiff's Comcast Listens complaint was "a clear, blatant attempt to inoculate herself against discipline."

The court found that plaintiff failed to present evidence establishing a prima facie case under CEPA, and memorialized its decision in a written order. Plaintiff appealed and makes the following arguments:

> I. SUMMARY JUDGMENT STANDARD.
>
> II. WHEN VIEWED IN THE LIGHT MOST FAVORABLE TO THE PLAINTIFF, CREDIBILITY ISSUES AND DISPUTED ISSUES OF MATERIAL FACT EXIST WHICH RENDER SUMMARY JUDGMENT INAPPROPRIATE.
>
> A. Sufficient Evidence Exists to Permit a Reasonable Jury to Determine that Plaintiff has Satisfied the First Element of a CEPA Claim.
>
> B. A Reasonable Jury Can Conclude that Plaintiff Engaged In Whistleblowing Conduct.
>
> C. Plaintiff Was Terminated From Employment, thus There is No Dispute that She Suffered an Adverse Job Action.
>
> D. A Reasonable Jury Could Conclude that a Causal Connection Exists Between Plaintiff's Whistleblowing Activity and the Adverse Employment Action Taken Against Her.

9

II.

Our review of an order granting a party's motion for summary judgment "is premised on the same standard that governs the motion judge's determination." RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 471 (2018). That is, we view the evidence in the light most favorable to the non-moving party to determine whether there exist genuine disputes of material fact. Petro-Lubricant Testing Labs., Inc. v. Adelman, 233 N.J. 236, 256 (2018); see also Brill, 142 N.J. at 540.

CEPA provides, in pertinent part, that "[a]n employer shall not take any retaliatory action against an employee because the employee," N.J.S.A. 34:19-3, "[o]bjects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:"

> (1) [I]s in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, if the employee is a licensed or certified health care professional, constitutes improper quality of patient care;
>
> (2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer,

A-2569-17T2

employee, former employee, retiree or pensioner of the employer or any governmental entity; or

(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

[N.J.S.A. 34:19-3(c).]

"Under the test set forth in McDonnell Douglas Corp. v. Green, [411 U.S. 792, (1973)], that [our Supreme Court] adopted in Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 97 (1990), the [plaintiff] carries the initial burden of establishing a prima facie case of retaliation." Winters v. N. Hudson Reg'l Fire & Rescue, 212 N.J. 67, 90 (2012). If the plaintiff carries his or her burden, the burden shifts to the defendant employer to "come forward and advance a legitimate reason for discharging [the] plaintiff." Zappasodi v. State, Dept. of Corr., Riverfront State Prison, 335 N.J. Super. 83, 89 (2000). If the defendant carries its burden, the burden shifts back to the plaintiff to "raise a genuine issue of material fact regarding whether the employer's proffered explanation is pretextual or whether, the 'retaliatory discrimination was more likely than not a determinative factor in the decision.'" Kolb v. Burns, 320 N.J. Super. 467, 479 (App. Div. 1999) (quoting Bowles v. City of Camden, 993 F. Supp. 255, 262 (D.N.J. 1998)).

To establish a prima facie CEPA claim under N.J.S.A. 34:19-3(c)(1) or (3), a plaintiff must prove:

> (1) [H]e or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c); (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.
>
> [Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003).]

In this case, the parties do not dispute that plaintiff performed a "whistle-blowing" activity or that she suffered an adverse employment action. Ibid. Therefore, we limit our discussion to the first and fourth prongs in our analysis of the court's disposition of defendant's summary judgment motion.

To satisfy the first prong of a prima facie case, a plaintiff "must identify a statute, regulation, rule, or public policy that closely relates to the complained-of conduct." Turner v. Associated Humane Soc'ys, Inc., 396 N.J. Super. 582, 593 (App. Div. 2007) (quoting Dzwonar, 177 N.J. at 462). A plaintiff need not show the employer's or another employee's conduct "actually violated the law or a clear mandate of public policy," ibid. (quoting Dzwonar, 177 N.J. at 462), but only that "he or she 'reasonably believes' that to be the case," Dzwonar, 177

N.J. at 462 (quoting Estate of Roach v. TRW, Inc., 164 N.J. 598, 613 (2000)). Where a defendant moves for "the trial court [to] determine as a matter of law that a plaintiff's belief was not objectively reasonable, the trial court must make a threshold determination that there is a substantial nexus between the complained-of conduct and a law or public policy identified by the court or the plaintiff." Id. at 464. If the court, in deciding the motion, finds that such a nexus exists, "the jury then must determine whether the plaintiff actually held such a belief and, if so, whether the belief was objectively reasonable." Ibid.

The fourth prong requires a plaintiff to show a causal connection, Dzwonar, 177 N.J. at 462, or in other words, a "factual nexus between their protected activity under CEPA and the alleged retaliatory conduct," Hancock v. Borough of Oaklyn, 347 N.J. Super. 350, 361 (App. Div. 2002). To meet this prong, a plaintiff is required to demonstrate "evidence of circumstances that justify an inference of retaliatory motive." Romano v. Brown & Williamson Tobacco Corp., 284 N.J. Super. 543, 550 (App. Div. 1995); see also Maimone v. City of Atl. City, 188 N.J. 221, 237 (2006) (noting this prong "can be satisfied by inferences that the trier of fact may reasonably draw based on circumstances surrounding the employment action"). Evidence of such circumstances may include "[t]he temporal proximity of employee conduct protected by CEPA and

an adverse employment action," <u>Maimone</u>, 188 N.J. at 237, but temporal proximity, "standing alone, is insufficient to establish causation," <u>Hancock</u>, 347 N.J. Super. at 361.

Rule 1:7-4(a) requires a motion court to "find the facts and state its conclusions of law thereon . . . on every motion decided by a written order that is appealable as of right." <u>R.</u> 1:7-4(a). "Naked conclusions do not satisfy the purpose of <u>Rule</u> 1:7-4(a)"; a court's fact findings must be correlated "with the relevant legal conclusions." <u>Curtis v. Finneran</u>, 83 N.J. 563, 570 (1980).

Here, the motion court did not find facts and make conclusions of law as to the first and fourth prongs of a prima facie case under CEPA "as mandated by <u>Rule</u> 1:7-4(a)." <u>Estate of Doerfler v. Fed. Ins. Co.</u>, 454 N.J. Super. 298, 301 (App. Div. 2018). Instead, without any "analysis or citation to even a single case," <u>Great Atl. & Pac. Tea Co. v. Checchio</u>, 335 N.J. Super. 495, 498 (2000), the court determined plaintiff could not have a reasonable belief that Spencer "stealing time . . . violat[ed] a law, rule, or a clear mandate of public policy," and that plaintiff's complaints that Spencer smoked marijuana and that Upsher assaulted her were "clear, blatant attempt[s] to [inoculate] herself against discipline," <u>cf.</u> <u>Dzwonar</u>, 177 N.J. at 464 (holding that if the trial court determines a "substantial nexus between the complained-of conduct and a law

A-2569-17T2

or public policy identified by the court or the plaintiff," whether a plaintiff's belief that a violation of same occurred was reasonable becomes a question for a fact finder). To the extent the court's limited determinations might be considered findings of fact, they could not properly support a grant of summary judgment because they constituted findings as to disputed facts. See Brill, 142 N.J. at 540 ("The 'judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" (alteration in original) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986))).

Moreover, the court's findings were impermissibly based on credibility determinations. The court's decision was founded, at least in part, by a finding expressly based on its "guess" that plaintiff "prophylactically raise[d] these issues, so that if anything [was] done against her, she can now claim it wasn't done because of what [she was] alleged to have done." See, e.g., Akhtar v. JDN Props. at Florham Park, LLC, 439 N.J. Super. 391, 399 (App. Div. 2015) ("Any issues of credibility must be left to the finder of fact."). Thus, the court's grant of summary judgment erroneously rested on its conclusion that plaintiff's reports to Comcast about the actions of her co-employees were unreasonable due to plaintiff's purported motivations. See In re Estate of DeFrank, 433 N.J. Super.

15

258, 266 (2013) ("It is ordinarily improper to grant summary judgment when a party's state of mind, intent, motive or credibility is in issue.").

We vacate the court's order and remand for a rehearing on defendants' motion for summary judgment because the court did not make findings as to the undisputed facts supporting defendant's motion as required by Rule 1:7-4(a) or analyze the facts under the legal standard applicable to a determination of the validity of a CEPA claim.[2] We acknowledge the court's vague reference to plaintiff's obligation to present evidence establishing a prima facie case under CEPA, but the court's limited findings do not address any of the legal elements of a prima facie case. See Dzwonar, 177 N.J. at 462. Nor did the court address defendants' argument that they are entitled to summary judgment because plaintiff failed to present evidence establishing the legitimate non-retaliatory reasons defendants articulated for terminating plaintiff's employment are pretextual. See Kolb, 320 N.J. Super. at 479.

---

[2] Our decision to vacate the court's order is founded solely on the motion court's failure to make the requisite findings under Rule 1:7-4(a) and because the limited findings the court made are erroneous because they are based on credibility determinations and resolved disputed issues of fact. We do not express any opinion on the merits of plaintiff's CEPA claim or defendants' summary judgment motion.

"Although our standard of review from the grant of a motion for summary judgment is de novo, our function as an appellate court is to review the decision of the trial court, not to decide the motion tabula rasa." Estate of Doerfler, 454 N.J. Super. at 301-02 (internal citations omitted). Because the motion court made credibility determinations, on remand the matter shall be assigned to a different judge. R.L. v. Voytec, 199 N.J. 285, 306 (2009).

Vacated and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2569-17T2