**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2701-24

TELICIA HARRINGTON,

     Plaintiff-Appellant,

v.

GARDEN STATE NISSAN,
INC., d/b/a LUXURY MOTOR
CARS, ROUTE 23 NISSAN,
RICHARD OSIASHVILA,
individually, RAY REDDOCK,
individually, and WENDY
DIANTONIO, individually,[1]

     Defendants-Respondents.

_____

Submitted April 14, 2026 – Decided April 24, 2026

Before Judges Firko and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1547-23.

Chatarpaul Law Firm PC, attorney for appellant (Jay Chatarpaul, on the brief).

---

[1] In plaintiff's complaint, Richard Osiashvila is improperly named as Richard Oshivelli and Wendy DiAntonio is improperly named as Wendy D'Antonio.

Zurich North America, attorneys for respondents (Susan S. Lloyd, on the brief).

PER CURIAM

Plaintiff Telicia Harrington appeals from a December 10, 2024 order granting summary judgment in favor of defendants Garden State Nissan, Inc. (Garden State) d/b/a Luxury Motor Cars (Luxury Motor) and Route 23 Nissan dismissing her claims for violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50; retaliation in violation of the LAD; and violation of the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -16. Plaintiff also appeals from a March 20, 2025 order granting summary judgment in favor of defendants Richard Osiashvila, Ray Reddock, and Wendy DiAntonio dismissing her claims against them for aiding and abetting the alleged LAD and CEPA violations. We affirm.

I.

We summarize the facts supported by "competent evidential materials presented" in the light most favorable to plaintiff. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). On August 22, 2022, plaintiff, who is Black, was hired by Garden State "as an office manager/assistant controller" and "was assigned to work at Luxury Motor" in Hillside. Her "starting salary was $75,000 annually." Plaintiff was previously employed by Towne Auto

Sales, Inc. in Kearny as a "[c]ontroller/[o]ffice [m]anager" for twelve years, where her "salary was approximately $115,000 annually."

Elena Bukovskaya, who is White, was the controller at Luxury Motor when plaintiff was hired and "was paid in excess of $104,000 annually." Bukovskaya had been employed by Garden State "for [twenty] years." On September 2, 2022, Bukovskaya "went on vacation, and in the interim, [p]laintiff took over her responsibilities." On September 14, Bukovskaya "temporarily resigned" and plaintiff "took over her job duties and responsibilities, in addition to performing [plaintiff's] duties as an office manager." On September 26, Bukovskaya "returned to work and resumed her duties."

On December 8, 2022, plaintiff sent an email to the human resources manager of Luxury Motor, Chrissy Ortiz, "with respect to mandatory employee rights notices" asking where to "get the [l]abor [l]aw posters that have to be posted in a conspicuous place for employees to see[?]" Ortiz responded that she would "take care of it." However, "[n]o posters were ever posted on any walls" and plaintiff's "email was ignored."

Bukovskaya "was terminated on December 21, 2022." On December 22, the owner of Garden State, Osiashvila, "assigned [plaintiff] the role of controller

3

for" Luxury Motor. Plaintiff's "salary stayed the same, while [her] duties increased dramatically."

On December 25, plaintiff sent Osiashvila a text message asking if she could bring her daughter to work the next day to help with paperwork. On December 26, he responded, "[n]o problem at all. Thank you for your hard work."

In "late December 2022/early January 2023" plaintiff "complained several times to" Osiashvila, Reddock, who was the "general manager of Garden State," and DiAntonio, who was the "[c]orporate [c]ontroller of Garden State," about "her salary and requested a raise." They "told [her] that Bukovskaya was more qualified than [her] and had more experience, and that [plaintiff] was paid the right amount of money." Plaintiff "believe[d] that [she] had more qualifications and skills than" Bukovskaya. Specifically, plaintiff worked "at a dealership as a controller/office manager for [twelve] years," had a "bachelor's degree in accounting" and "had more skills and knowledge of software systems used by" Luxury Motor.

On January 7, 2023, plaintiff "was approached by an employee of Garden State . . . who complained to plaintiff that another employee was sexually harassing her." On January 9, 2023, plaintiff sent an email to Reddock stating:

Unfortunately you were not here this past Friday [January 6, 2023] and I nor some of the other employees had any knowledge of knowing that you were not coming in when in fact you were here the previous Friday on [December 30, 2022]. No one knows your schedule. So, first my question is are Fridays going to be like your normal day off? I gave you your paycheck before going home Thursday while trying to leave at 7[:00 p.m.] and had no idea or did[ not] hear you say you were going to be off the next day. Which led to a lot of unexpected problems that were thrown at me because of your absence. I was approached by disgruntled employees who were not paid properly and they even started to gang up on me while I was trying to help and be of assistance. Fridays are my early days but was questioned by some who did[ not] know and thought I was just leaving because of the issues. This place is so very unstable even the higher ups came down on me for informing by email to mainly management of the situation at hand and not to the entire store like what was said. The other email I sent was more so informative not negative, however, this one is definitely not a positive email. There possibly may be a situation at hand that was brought to my attention and I am not sure about but definitely do not want to get involved or be part of. So I will forward to you. Friday after complaints about employees not getting paid and vehicles they purchased not being serviced the conversation went further in detail about sexual harassment. This is where I have no expertise and would notify upper management just to cover my tracks because I do[ not] know why it was mentioned to me. It is a personal situation that I do[ not] know anything about. So I advised her to report to [human resources] or to the [general manager].

5

That afternoon, Reddock "held a meeting with the employee, . . . plaintiff, and several managers regarding the sexual harassment complaint," during which Reddock "told the employee that he would have to 'get the owner involved.'"

"A few hours later, . . . [Osiashvila], D[iA]ntonio[,] and Reddock called [plaintiff] into a conference room and told . . . [plaintiff she] was terminated." Plaintiff contends DiAntonio said plaintiff "getting involved in and bringing complaints of sexual harassment to management's attention were 'coming off the wrong way'" and plaintiff "was being terminated because [she] 'was not doing what [she] was told to do.'" According to plaintiff, "[i]n discovery, [d]efendant[s] presented a recording of [her] termination stating that [she] was 'not a good fit' and that [she] was being 'insubordinate, []not following processes,' etc."[2]

On May 2, 2023, plaintiff filed her complaint against defendants contending: (1) "Garden State discriminated against . . . plaintiff on account of her race" in violation of the LAD (count one); (2) "Garden State retaliated against [p]laintiff by terminating her employment" in violation of the LAD (count two); (3) Garden State terminated plaintiff because she complained "that

_____

[2] The recording is not included in the appellate record. Our understanding of the content of the recording is based on plaintiff's November 18, 2024 certification filed in opposition to defendants' motions for summary judgment.

her salary was too low," "about the lack of posting of mandatory anti-discrimination workplace notices" and "that other employees were not being paid" in violation of CEPA (count three); (4) Osiashvila, Reddock, and DiAntonio "aided, abetted[,] and encouraged each other and Garden State in committing discriminatory acts" in violation of the LAD (count four); and (5) Osiashvila, Reddock, and D'Antonio "aided, abetted[,] and encouraged each other and Garden State in committing discriminatory acts" in violation of CEPA (count five).[3]

The parties engaged in limited written discovery and did not take any depositions. After the close of discovery, defendants filed their first motion for summary judgment, which did not address the aiding and abetting claims set forth in counts four and five of plaintiff's complaint. Plaintiff opposed the motion in reliance on her November 18, 2024 certification, which set forth the facts previously summarized.

On December 6, 2024, the court heard oral argument. On December 10, the court entered an order, supported by a written opinion, granting the motion

---

[3] Plaintiff named Route 23 Nissan in the complaint and included it in the prayers for relief in counts one, two, and three, but did not set forth the basis for any claims against that entity. We will, as did the trial court, assume counts one, two, and three are asserted against Route 23 Nissan and Garden State.

A-2701-24

in part as to counts one, two, and three, and denying it in part as to counts four and five.

The court dismissed count one, violation of the LAD, because plaintiff "proffered no evidential materials to substantiate her claim" and "merely offered bare allegations." The court rejected plaintiff's claim that she "was entitled to a higher salary" based on her proficiency "in a certain software utilized by" Luxury Motor because it was "not supported by any evidential materials." Likewise, plaintiff did not offer any "evidence to corroborate her assertion that she 'had more qualifications and skills than'" Bukovskaya or "to otherwise support her claim for pay discrimination." The court found plaintiff failed to come forward with any proof "that she was entitled to the same salary as . . . Bukovskaya who . . . worked at Garden State for twenty . . . years."

As to count two, retaliation in violation of the LAD, the court found plaintiff "offered no evidence to substantiate her claim" or "demonstrate that her termination was a pretext for discrimination." Similarly, as to count three, violation of CEPA, the court found plaintiff failed to proffer any competent evidence to support her claims she was terminated in retaliation for complaining about her own salary, reporting other employees complained to her that they were not paid properly, or inquiring about the posting of "[l]abor [l]aw posters."

A-2701-24

In addition, the court found "despite [her] allegations that [d]efendants' purported reasoning for her termination, namely her insubordination, not being a good fit, and not following processes, [are all a] pretext for discrimination, there is no evidence in this motion record that would support such a claim." It rejected her claim that Osiashvila's December 26, 2022 text message to her thanking her for "[her] hard work" showed defendants' stated reasons for her termination were pretextual. The court denied the motion as to counts four and five because defendants did not address those claims in their motion.

Defendants subsequently moved for summary judgment on counts four and five and the court heard oral argument on March 13, 2025. On March 20, the court entered an order granting the motion supported by a written opinion. The court dismissed count four, aiding and abetting a violation of the LAD, because it previously dismissed plaintiff's LAD claim and "there must be a primary discriminatory act to aid and abet."

The court granted the motion as to count five, aiding and abetting a violation of CEPA, because plaintiff did not provide evidence "sufficient to show [the] individual [d]efendants were responsible for any retaliatory conduct." Rather, her claims that Osiashvila, Reddock, and DiAntonio were

9

responsible for any allegedly retaliatory conduct by Garden State were based on nothing more than her self-serving assertions. This appeal followed.

## II.

On appeal, plaintiff contends the court "improperly focused on the parties' inability to settle the case because both sides did not conduct depositions, rather than analyzing the evidence under applicable summary judgment principles." Plaintiff argues she produced "sufficient evidence . . . to raise genuine issues of material fact" as to: (1) "count[] [one] of the complaint (discrimination in compensation)"; (2) "retaliation in violation of the LAD"; and (3) "retaliation under CEPA."

## III.

We review a grant of summary judgment de novo, Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021), "under the same standard that govern[ed] the court's determination." Goldhagen v. Pasmowitz, 247 N.J. 580, 593 (2021). We "must 'consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Meade v. Township of Livingston, 249 N.J. 310, 327 (2021) (quoting Brill, 142 N.J. at 540).

A-2701-24

"[T]he evaluation of every motion for summary judgment requires the court, trial or appellate, to review the motion record against not only the elements of the cause of action but also the evidential standard governing that cause of action." Bhagat v. Bhagat, 217 N.J. 22, 40 (2014). "Bald assertions [in a certification] are not capable of either supporting or defeating summary judgment." Ridge at Back Brook, LLC v. Klenert, 437 N.J. Super. 90, 97-98 (App. Div. 2014) (citing Puder v. Buechel, 183 N.J. 428, 440-41 (2005)). The non-moving party cannot defeat a summary judgment motion by the identification of a disputed fact of an insubstantial nature. Brill, 142 N.J. at 529-30.

Based on our de novo review, we are convinced the court properly granted defendants' motions for summary judgment and affirm substantially for the reasons set forth in the court's written opinions. We add the following comments.

Plaintiff's claim, based solely on comments made during oral argument, that the court "improperly focused on the parties' inability to settle the case because [they] did not conduct depositions" lacks merit. In its written opinions, the court properly construed the "competent evidential materials presented" in the "light most favorable" to plaintiff and determined she failed to set forth

11

evidence sufficient to raise a genuine issue as to any material fact. The court did not dismiss plaintiff's claims because the parties failed to settle the case or conduct depositions.

The court correctly determined plaintiff failed to produce competent evidence sufficient to support her LAD claim. Pursuant to the LAD, it is "an unlawful employment practice" or "unlawful discrimination" for "an employer, because of the race" or "color . . . of any individual . . . to discriminate against such individual in compensation or in terms, conditions, or privileges of employment." N.J.S.A. 10:5-12(a).

LAD discrimination claims follow the procedural burden-shifting analysis articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Tisby v. Camden Cnty. Corr. Facility, 448 N.J. Super. 241, 248 (App. Div. 2017) (quoting Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447 (2005)) ("New Jersey has adopted the 'procedural burden-shifting methodology articulated in McDonnell Douglas Corp.'"). That burden-shifting paradigm first requires the plaintiff to demonstrate a prima facie case of unlawful discrimination. Ibid. (citing Victor v. State, 203 N.J. 383, 408 (2010)). A prima facie case is made by showing:

> (1) plaintiff belongs to a protected class; (2) she [or he]
> was performing her [or his] job at a level that met her

[or his] employer's legitimate expectations; (3) she [or he] suffered an adverse employment action; and (4) others not within the protected class did not suffer similar adverse employment actions.

[Ibid. (quoting El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 167 (App. Div. 2005)).]

In a claim for discrimination based specifically on compensation, the plaintiff must show that "unequal pay was given for the performance of work that is substantially equal to that performed by [other] employees." Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 110 (1990).

As the court correctly concluded, plaintiff failed to offer any competent evidence to support her claim that she was paid less than Bukovskaya based on her race. Her contention that she "had more qualifications and skills than . . . Bukovskaya" was based on nothing more than her own self-serving certification. As the court found, she did not offer any "evidential materials" to establish why plaintiff, who had been employed by Garden State for less than six months, "was entitled to the same salary as . . . Bukovskaya[,] who . . . worked at Garden State for twenty . . . years." Plaintiff, therefore, failed to satisfy her burden to establish a prima facie case of unlawful discrimination in violation of the LAD.

13

The court also properly granted summary judgment on plaintiff's claim of retaliation in violation of the LAD. N.J.S.A. 10:5-12(d) provides that it is unlawful discrimination

> [f]or any person to take reprisals against any person because that person . . . aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.
>
> [N.J.S.A. 10:5-12(d).]

To establish a prima facie case of a retaliation under the LAD, a plaintiff must

> demonstrate that: (1) plaintiff was in a protected class; (2) plaintiff engaged in protected activity known to the employer; (3) plaintiff was thereafter subjected to an adverse employment consequence; and (4) that there is a causal link between the protected activity and the adverse employment consequence.
>
> [Victor, 203 N.J. at 409 (citing Woods-Pirozzi v. Nabisco Foods, 290 N.J. Super. 252, 274 (App. Div. 1996)).]

If a plaintiff demonstrates a prima facie claim, the burden of going forward, but not the burden of persuasion, "shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." Viscik v. Fowler Equip. Co., 173 N.J. 1, 14 (2002). If the employer articulates a legitimate reason for its action, "the burden shifts back to the plaintiff to show

14

that the employer's proffered reason was merely a pretext for discrimination." Ibid. To prove pretext, a plaintiff must show the proffered reason was false, and "the employer was motivated by discriminatory intent." Ibid.

Indeed, overcoming the pretext burden

> requires more of a plaintiff than simple identification of an act or event that the plaintiff believes bespeaks discrimination. As our Supreme Court has held, "[t]o prove pretext, . . . a plaintiff must do more than simply show that the employer's [proffered legitimate, non-discriminatory] reason was false; he or she must also demonstrate that the employer was motivated by discriminatory intent."
>
> [El-Sioufi, 382 N.J. Super. at 173 (alterations in original) (quoting Viscik, 173 N.J. at 14).]

"Plaintiff's burden on the pretext part of the analysis . . . is not insignificant." Id. at 174. A plaintiff "does not qualify for a jury trial unless he or she can 'point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Zive, 182 N.J. at 455-56 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

By plaintiff's own admission, defendants articulated legitimate, nondiscriminatory reasons for her termination. Specifically, that she was being terminated because "[she] was 'not a good fit' and that [she] was being 'insubordinate, []not following processes,' etc." Plaintiff's only response to defendants' stated reasons is her bald assertion that "these excuses are false and pretext for discrimination." In her brief on appeal, she does not address her obligation to point to evidence that defendants' stated reasons were pretextual. Because plaintiff failed to offer any evidence to show the proffered "reason was false," and her termination was "motivated by discriminatory intent," the court correctly determined defendants were entitled to summary judgment on count two. Viscik, 173 N.J. at 14.

We are unpersuaded by plaintiff's claim that the court erred by dismissing her CEPA claim for similar reasons. To establish a prima facie CEPA claim, a plaintiff must demonstrate that:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;
>
> (2) he or she performed a "whistle-blowing" activity described in [N.J.S.A. 34:19-3(a) or (c)];
>
> (3) an adverse employment action was taken against him or her; and

16

> (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.
>
> [Lippman v. Ethicon, Inc., 222 N.J. 362, 380 (2015) (quoting Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003)).]

To satisfy the first element, a plaintiff "must identify a statute, regulation, rule, or public policy that closely relates to the complained-of conduct." Dzwonar, 177 N.J. at 463. A mere disagreement with an employer's practice, policy, or activity is insufficient to defeat summary judgment. Young v. Schering Corp., 275 N.J. Super. 221, 236-37 (App. Div. 1994). See Hitesman v. Bridgeway, Inc., 218 N.J. 8, 32 (2014) ("[A] pivotal component of a CEPA claim is the plaintiff's identification of authority in one or more of the categories enumerated in the statute that bears a substantial nexus to his or her claim").

A plaintiff "need not show that his or her employer or another employee actually violated the law or a clear mandate of public policy," Dzwonar, 177 N.J. at 462, or that the conduct is "an actual violation of a law or regulation." Est. of Roach v. TRW, Inc., 164 N.J. 598, 613 (2000). The plaintiff need only show he or she "'reasonably believe[d]' that to be the case." Ibid.

The second element of a CEPA claim requires the plaintiff to prove he or she performed a whistle-blowing activity. Lippman, 222 N.J. at 380. Pursuant

17

to N.J.S.A. 34:19-3(a), an employee performs a protected whistle-blowing activity if he or she:

> Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes:
>
> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ; or
>
> (2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation[.]
>
> [N.J.S.A. 34:19-3(a).]

Third, a CEPA plaintiff must demonstrate he or she suffered an adverse employment action. Lippman, 222 N.J. at 380. CEPA defines retaliation as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2(e). To satisfy the fourth element of CEPA, a plaintiff must demonstrate "a causal connection . . . between the whistle-blowing activity and the adverse employment action." Dzwonar, 177 N.J. at 462.

Once a plaintiff establishes a prima facie case, the burden shifts to the employer to "rebut the presumption of discrimination by articulating some legitimate nondiscriminatory reason for the adverse employment action." Allen

18

v. Cape May County, 246 N.J. 275, 290-91 (2021) (quoting Kolb v. Burns, 320 N.J. Super. 467, 478 (App. Div. 1999)). However, the "plaintiff [retains] the ultimate burden of proving that the employer's proffered reasons were a pretext for the discriminatory action taken by the employer." Id. at 291 (quoting Kolb, 320 N.J. Super. at 478).

We are persuaded the court correctly determined plaintiff failed to offer "evidence to substantiate her claim" that she was terminated in retaliation for complaining about her salary, asking Ortiz where to "get the [l]abor [l]aw posters," or telling Reddock she was "approached by disgruntled employees who were not paid properly." Plaintiff's claims are based on nothing more than her self-serving certification.

Moreover, even if plaintiff could establish a prima facie CEPA claim, defendants articulated legitimate nondiscriminatory reason for her termination. Because plaintiff failed to set forth any competent evidence to demonstrate the proffered non-discriminatory reasons were pretextual, her CEPA claim was properly dismissed. Allen, 246 N.J. at 291.

To the extent we have not specifically addressed any remaining arguments, including plaintiff's arguments that the individual defendants aided

A-2701-24

or abetted the alleged LAD and CEPA violations, it is because they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2701-24